No. 28,165.

THE KANSAS WHEAT GROWERS' ASSOCIATION, *Appellant,* v. R. C. LESLIE and THE FARMERS STATE BANK OF ZENDA, *Appellees.*

(271 Pac. 284.)

Opinion filed November 3, 1928.

*T. A. Noftzger, George W. Cox, W. J. Masemore, Lawrence Weigand,* all of Wichita, and *Adrian S. Houck,* of Medicine Lodge, for the appellant.

*Riley W. MacGregor,* of Medicine Lodge, *J. N. Tincher* and *Rubert G. Martin,* both of Hutchinson, for appellee R. C. Leslie.

The opinion of the court was delivered by

MARSHALL, J.: · This action is brought by a coöperative marketing corporation, organized under sections 17-1601 to 17-1625 of the Revised Statutes, to recover stipulated damages of twenty-five cents a bushel from R. C. Leslie for his failure to deliver to the plaintiff all of the wheat raised by him in 1921, 1922, 1923, 1924 and 1925, and to enjoin him from selling to anyone other than the plaintiff the wheat raised during those years which he then had on hand and which had not been sold. The evidence was submitted to a jury, which returned a verdict in favor of R. C. Leslie, and judgment was rendered accordingly. The plaintiff appeals.

The first complaint concerns the introduction of evidence. The contract provided:

"3. The grower [R. C. Leslie] expressly warrants that he is now in a position to control said crops, and has not heretofore contracted to sell, market or deliver any of his said wheat to any person, firm or corporation, except as noted at the end of this agreement. Any wheat covered by such existing contracts

or crop mortgage shall be excluded from the terms hereof for the period and to the extent noted, if the lien holder refuses to permit delivery thereof."

There was no notation at the end of the contract. The court, over objection, permitted R. C. Leslie to introduce evidence which tended to prove that at the time the contract was signed there was a mortgage on the wheat for the year 1921, which had then been sown. The plaintiff argues that the introduction of that evidence was a violation of the rule which forbids the introduction of evidence to add to, change, alter, or vary the terms of a written contract in the absence of accident, fraud or mistake. The contract in effect said that there was no encumbrance of any kind against the crop. Leslie was thereby estopped from saying there was a mortgage on the wheat when he signed the contract. The introduction of the evidence to show the mortgage did tend to add to, change, alter and vary the terms of the contract. The introduction of the evidence by Leslie was prejudicially erroneous.

■ Another complaint is made of the introduction of evidence. In connection with his testimony concerning the mortgage and over the objection of the plaintiff, R. C. Leslie testified that, after the wheat had been threshed, he informed the president of the plaintiff association that the wheat had been threshed, that there was a mortgage thereon, and that he was ready to deliver the wheat to the plaintiff if the latter would discharge the mortgage. Leslie further testified that the president of the plaintiff association then informed him the wheat could not be accepted under those conditions, and told him he could deliver the wheat to the mortgagee. On this subject, the court instructed the jury as follows:

"With reference to the crop harvested in the year 1922, you are instructed that if you find and believe from the evidence that this crop was mortgaged by the defendant, and prior to the sale or disposal of the same by the defendant he mortgaged said crop, and after said crop had been mortgaged he had an agreement with the plaintiff, through its president, in which agreement the plaintiff, through its president, authorized and directed the defendant to have the said wheat sold and applied upon the mortgage covering said wheat, and in pursuance of said direction and authorization the defendant sold or caused to be sold said wheat to satisfy said chattel mortgage thereon, then I say to you that the plaintiff would not be entitled to recover any sum from the defendant on account of the disposal of such wheat to satisfy said chattel mortgage thereon."

It is argued that the president of the plaintiff had no authority under the law to enter into any such agreement with R. C. Leslie in

the absence of instructions from either the stockholders or the board of directors.

Whether or not the president of the association informed R. C. Leslie that he could deliver the wheat to the mortgagee was immaterial, because R. C. Leslie contracted to deliver the wheat to the plaintiff and warranted that he was in a position to control the wheat and had not contracted to sell, market or deliver any of it to any other person. Under the contract to the plaintiff, R. C. Leslie was bound to deliver the wheat to the plaintiff. The mortgage previously executed did not relieve him of that obligation. His failure to comply with his contract rendered him liable for the payment of the twenty-five cents per bushel for wheat not delivered to the plaintiff. The admission of the evidence complained of was error.

In 1923, R. C. Leslie raised 2,400 bushels of wheat, 1,437 bushels of which was sold to another person for seed, which was permitted under the contract. There remained 963 bushels, which the plaintiff argues should have been delivered to it, but which was taken by the man who threshed the wheat and was sold to realize the amount that was due him for threshing it. On this subject the court instructed the jury that—

"If you find and believe from the evidence that any part of the balance of such wheat was appropriated by others other than the plaintiff to pay such expenses without the consent of the defendant and that the defendant did not consent to such appropriation of said wheat for such expenses, then I say to you that the plaintiff would not be entitled to recover any damages for wheat so appropriated without defendant's consent."

There does not appear to have been any evidence which tended to prove that the thresher sold the 963 bushels of wheat without the consent of R. C. Leslie.

Section 58-203 of the Revised Statutes reads:

"That any person operating a threshing machine, or engaged in the business of threshing and harvesting grain or grain crops, for others, who shall, under contract with the owners of any such grain or grain crop, or with the mortgagee thereof, thresh and harvest such grain or crop, shall be entitled to a lien thereon from the date from such harvesting or threshing, to secure the payment of any amount due for threshing and harvesting, from and after the date of such threshing or harvesting. Such lien shall be preferred to that of any prior chattel mortgage or encumbrance."

Section 58-204 prescribes the manner in which such a lien is ob-

tained—by filing a lien statement in the office of the register of deeds—and prescribes the manner in which such lien may be enforced. The evidence did not disclose that the statutory method had been followed by the man who did the threshing. The contract with the plaintiff provided that—

"(c) If the grower places a crop mortgage upon any of his crops during the term hereof, the association shall have the right to take delivery of his wheat and to pay off all or part of the crop mortgage for the account of the grower and to charge the same against him individually.

"The grower shall notify the association prior to making any crop mortgage; and the association will advise the grower in any such transactions."

The man who did the threshing was not a chattel mortgagee; he was entitled to a statutory lien. His rights were no greater than if he had held a chattel mortgage placed on the wheat after it was threshed and of which the plaintiff had been previously notified. The record does not disclose that the thresher had any knowledge of the rights of the plaintiff under its contract with R. C. Leslie. If he did have such knowledge, the principle of law governing his rights would be the same as if he were a mortgagee with notice and would be controlled by *Wheat Growers Association v. Floyd*, 116 Kan. 522, 227 Pac. 336, where this court said:

"The rights of a mortgagee of harvested wheat are inferior to the rights of one holding a contract under section 17-1616 of the Revised Statutes, where the mortgagee had knowledge of the contract at the time the mortgage was made." (Syl. ¶ 2.)

If the wheat was taken to pay the threshing bill, without the consent of R. C. Leslie, it would be inequitable for him to be obliged to pay the twenty-five cents a bushel damages provided for in the contract for failing to deliver that wheat to the plaintiff. If it was taken with his consent, he would be liable because the wheat should have been delivered to the plaintiff if it had desired such delivery and because the man who did the threshing should have filed his lien as prescribed by statute. The instruction should not have been given.

■ There was an issue raised concerning the ownership of the crops raised in the years 1924 and 1925. R. C. Leslie claimed that the crop for those years was raised by his wife. The plaintiff claimed that the transaction by which the wife acquired title to the crops raised in those years was fraudulent, because the transaction had been entered into by R. C. Leslie, his wife, and the banker with which R. C. Leslie did business, for the purpose of avoiding the con-

tract with the plaintiff. There was that connected with the transaction which would uphold a finding by the jury that the transaction was fraudulent as against the plaintiff, but there also was evidence which tended to prove that the transaction was entered into in good faith and one into which R. C. Leslie was practically compelled to enter. This was a question of fact for the jury, and a further discussion of the evidence will not be beneficial.

Because of the introduction of the evidence concerning the existence of the mortgage at the time the contract was entered into; because of the introduction of the evidence concerning the transaction with the president of the plaintiff corporation; and because of the instruction given without any evidence on which to base a material part of it, the judgment is reversed, and a new trial is granted.