## Dexter A. Kathan and Arlene Kathan v. Bellows Falls Village Corporation

[ 223 A.2d 470 ]

June Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 4, 1966

*Chapman & MacBride* for plaintiffs.

*Albert T. Bolles* for defendants.

**Smith, J.** The defendant municipal corporation brings this appeal from a decree of the Court of Chancery of Windham County. The court adjudged the defendant liable for certain injuries to the real estate owned by the plaintiffs and entered a decree awarding damages of $5,500.00 to the plaintiffs from the defendant, as well as ordering the defendant to take certain actions to protect plaintiffs' property from further damages.

The plaintiffs are the owners of a frame dwelling house located on the southeasterly side of Terrace Street in the Village of Bellows Falls. This house was erected prior to 1897 and the plaintiffs acquired the property in 1952 and have lived in the dwelling since that time.

On the northwesterly side of plaintiffs' premises there is a public highway known as Front Street which was laid out by the Selectmen of the Town of Rockingham some time subsequent to `1897, which street slopes upward toward the north. On plaintiffs' property, parallel

with Front Street, is a dry stone wall, varying in height from two feet at the southerly end to eight feet at the northerly end, and the westerly portion of the ell part of plaintiffs' house is set upon this stone wall.

In 1912, the municipal corporation altered and widened Front Street and erected a cement retaining wall along its easterly side. This cement wall is 3 feet from and above the stone wall of the plaintiffs at the southern end of said wall and about six feet at the northerly end. Front Street descends in a southerly direction on an approximate 14% grade and intersects at the bottom thereof with Terrace Street which extends east and west in front of plaintiffs' house. The land between the dry stone wall of the plaintiffs and the cement retaining wall erected by the defendant municipality is owned by the plaintiffs.

It was the plaintiffs' contention, and the Chancellor so found, that over the past few years the heavier vehicular traffic on Front Street has caused disintegration and failure of both the cement wall and the stone wall. Both have been forced or pressured outwards in an easterly direction toward the west end of plaintiffs' house. This result is caused by the cement retaining wall not being of proper construction or height, weight or size to withstand the pressures exerted against it by vehicular traffic.

The Chancellor found that movement of the walls easterly placed horizontal pressure on the west side of the plaintiffs' house, which, in turn caused a buckling of the house in places. Also found was that the windows were bowed, there was a deflection of the clapboards, a pushing of the eave end and ridge of the roof, and "that the whole house is being pushed and damaged." Further found was that such damages will continue and increase unless something is done by the defendant municipality to remedy the condition of the cement retaining wall.

The defendant lists as a "question presented" its contention that there is no evidence in the case to support the finding of the Chancellor (No. 22) that the damage and destruction of plaintiffs' house has been and is caused by the increased lateral pressure eastward resulting from the vehicular traffic on Front Street. Our search of the record before us disclosed that evidence to this effect was given by the engineer, Walter Henry, improved as a witness by the plain-

tiffs. He testified that the forces on Front Street or the pressures on it, caused the dry wall to fail.

Defendant contends that there was no evidence presented in the case tending to show that plaintiffs had suffered any decrease in the fair market value of their property.

It is the argument of the defendant that the measure of damages in the instant case must be the difference between the fair value of the property before any damage was sustained and the fair market value of the property after the damages were sustained.

The Chancellor made four findings relative to the damages to the plaintiffs:

"No. 38. The present fair market value of the property is $15,000.00.

39. Plaintiffs have sustained a damage to their dwelling house of $5,500.00.

40. The cost and expense of placing plaintiffs' dwelling house back into proper condition insofar as it is possible to do so is $5,500.00.

41. The damages to plaintiffs' dwelling as found herein has decreased its present fair market value $5,500.00."

The Decree states: "The plaintiffs have and recover from the defendant damages in the amount of Five Thousand Five Hundred Dollars ($5,500.), together with their taxable costs."

The defendant cites to us several cases in support of its argument that the measure of damages here was the difference between the fair market value of the property before any damage was done as contrasted with its fair market value after the damage was sustained. *Smith* v. *State Highway Board,* 125 Vt. 54, 209 A.2d 495; *City of Winooski* v. *State Highway Board,* 124 Vt. 496, 207 A.2d 255, and cases cited.

Both of the cases cited have to do with the taking of land by eminent domain under the highway statute. Damages in such action are controlled by statute (19 V.S.A. §221).

■ But this is not a proceeding in eminent domain. Here there is no condemnation of the property; no appropriation of private property for public purposes. As the plaintiffs alleged in their complaint, they were seeking "damages for injury wrongfully heretofore

caused to their property by defendant." Plaintiffs did not claim a deprivation of their property by the defendant, nor a taking by it. The property in question would still be that of the plaintiffs at the completion of this chancery action, no matter what its result might have been.

The "before and after rule" on damages to real estate presupposes an instantaneous damage of property where between one moment and the next the property is damaged so as to decrease in value. But here, as the findings and evidence disclose, the damage done was a gradual and continuing process, over a period of some years. It is conceivable that it might be possible to select a date certain which could be used to determine the fair market value of the plaintiffs' property before any damage had been done to it, but the fixing of a definite date, in view of the continuing and increasing damage to the property over a long period of time, when such damage became final, so as to determine the fair market value of the property after the damage had been done, is an impossibility. What is involved here is a continuing trespass, and one that may possibly extend into the future unless remedial steps are taken, and the cost of repair is the most appropriate measure of damages.

The Chancellor has not found here that the damage to the plaintiffs' property is a permanent one. The finding was that the property could be returned to its former condition by the expenditure of $5,500.00 in repair. We recognize that it is difficult to state a general rule of damages for tortious injuries to realty when those injuries do not cause permanent damage. This is due to the variety of injuries which can occur, and the varying amounts of time and expense that may be needed in each case presented.

Under the facts presented here we think that the proper rule to be applied is the reasonable cost of repairing the damage or restoring the property to its former condition. 22 Am. Jur. 2d Damages §135, and cases cited thereunder. The Chancellor found that the cost of such repair to the plaintiffs' realty was $5,500.00, and this figure is supported by the evidence of the witness, Wynn, a builder called to testify by the plaintiffs. This finding supports the judgment order made below.

As the defendant contends, the Chancellor did make findings that the fair market value of the property was $15,000.00 (No. 38) and

that the fair market value of the plaintiffs' dwelling was reduced by $5,500.00 by the damage caused by the defendant. By this finding, the Chancellor determined that the fair market value of the property would be reduced by the amount of repairs. A prospective buyer might well estimate the value of the property as if no repairs were needed, and then reduce the total value by deducting therefrom the cost of repairs to arrive at the fair market price. While such finding may be immaterial where, as here, the measure of damages is the cost of repairs, it is not ground for reversal.

The entry is *"Judgment Affirmed."*