## Carroll T. Bean and Alice Bean v. Sears, Roebuck & Company

[276 A.2d 613]

No. 38-70

Present: **Holden, C.J., Barney, Smith and Keyser, JJ., and Daley, C.S.J.**

Opinion Filed April 7, 1971

*Lee E. Emerson,* Barton, for Plaintiffs.

*Wick, Dinse & Allen,* Burlington, for Defendant.

**Holden, C.J.** The plaintiffs, husband and wife, own and operate a dairy farm in the town of Burke. They acquired the property in June 1963 and have lived with their family on the farm since that time.

In December of that year the plaintiffs purchased an oil fired furnace and hot air heating system from the defendant. The plaintiffs relied on the defendant in selecting the type, size and installation of the unit and the location and installation of the oil tank. The equipment was installed by the defendant in January 1964.

This proved to be an unfortunate venture for the installation was a source of trouble from the outset. The fire box burned out on three different occasions. In its second year of service the electric motor burned out. In 1965 the plaintiff caused an artesian well to be drilled near the farmhouse, at an approximate cost of $2,300, which produced a flow of fifteen gallons a minute. This was the only source of water supply on the farm. In 1966, the well was found to be polluted by the leakage of one hundred or more gallons of fuel oil because of a defective feed pipe, caused by improper installation. In September 1968, the furnace became ignited causing smoke, smudge and soot damage to the recently remodeled and redecorated interior of the farmhouse.

This action was brought to recover the damage which the plaintiffs sustained by this series of misadventures. The jury found the defendant liable in the amount of six thousand dollars. The defendant appeals, claiming error in the admission of evidence and in the court's instructions to the jury. We turn to the evidentiary question first.

The plaintiff inquired of Emory Hebard, a real estate broker and appraiser, to testify concerning the market value of the farm before and after the pollution of its water supply. The opinion given by the witness referred to the polluted well as "being the only source of water on the farm. . . ." The defendant contends the assumption, that the farm had only one source of water, is not supported by, and is contrary to the evidence. The witness had inspected the farm and had talked with the plaintiffs about the water supply.

Before this witness was called, the plaintiff Carroll Bean had testified there was no other water supply on the farm. However, he had previously explained that at the time he pur-

chased the property there was a "well and more or less a seepage in a swamp, two hundred feet distant from the house. This proved inadequate and went dry in time of drought." There was also evidence from a well driller called by the defendant. This witness offered the opinion that another well could be drilled in the vicinity and to the same depth of the well drilled in 1965 which would provide water free from the pollutant.

We have a statute on the subject of this claim of error. 12 V.S.A. § 1643. It provides that an expert witness may be asked to state his opinion based on his personal observation or on evidence seen or heard at the trial without first specifying the data upon which his opinion is based. Supplying the specific data may be left to later direct or cross-examination. The form of the question and the sufficiency of the witness' information are left to the discretion of the trial judge. *Tinney* v. *Crosby*, 112 Vt. 95, 99, 22 A.2d 145 (1941). If the opinion is to stand, it shall be based on facts developed in the evidence. A shortage in the basic facts is properly challenged by a subsequent motion to strike. *Bliss* v. *Moore & Stoughton*, 112 Vt. 185, 190, 22 A.2d 315 (1941).

We have not found that the opinion given by the witness Hebard was questioned by such a motion in the instant case. In any event, the underlying evidence is to the effect that the polluted well was the only operative and productive source of supply at the time under investigation. There was no abuse of discretion in the court's admitting the expert's answer based on that premise.

The defendant contends it was error for the trial court to instruct the jury that the measure of damage was the difference in the fair market value of the property before and after the well became polluted. The court explicitly excluded any recovery by the plaintiff for the inconvenience they may have suffered at the hands of the defendant. The court also ruled as speculative the plaintiffs' claim for the loss of milk production. Later in the instructions the court charged the jury that they could take into consideration the cost of repairing the damage caused by smoke and smudge resulting from the fire.

The gist of this assignment of error is that the evidence does not support an award for permanent damage to the plaintiffs' farm. It is the defendant's thesis that diminution in value is not the proper measure of damage for injuries to real property. Relying on *Kathan* v. *Bellows Falls Village Corporation*, 126 Vt. 86, 89, 223 A.2d 470 (1966), it contends the proper rule is the cost of restoration of the property to its former condition fixes the correct award.

The two rules to which the defendant refers are not necessarily mutually exclusive. Indeed, their application may produce the same result. *Whitman Hotel Corporation* v. *Elliott & Watson Engineering Corporation*, 137 Conn. 562, 79 A.2d 591, 596 (1951).

■■ If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. If the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury. See 22 Am.Jur.2d *Damages* § 132; Restatement (Second) of Torts § 929 (1965).

■ The defendant argues that the pollution of the well was repairable by use of a filtering device which it had made available to the plaintiffs for a year after the water supply became polluted. The taste of the water improved but the presence of pollution persisted. The presence of kerosene was clearly indicated after the defendant disconnected the filter. Thereafter the plaintiffs declined to purchase from the defendant filtering elements and procured their drinking water by bringing it to the farm in jugs. This was their option. And there was no obligation on the part of the plaintiffs to revert to a temporary expedient suggested by the defendant to its advantage which failed to cure the harm which the defendant had brought upon them.

In the record presented here, there is evidence from the state geologist that the damaging effect of the oil pollutant cannot be precisely fixed, but that it will remain for a great length of time. He pointed out that the movement of the water in

itself is not sufficient to clear out the pollutants; natural purification could take a great many years.

The defendant claims the trial court erred in not instructing the jury that it was the plaintiffs' duty to mitigate their damages. The point was raised at conclusion of the charge, in the language of the exception, ". . . because of the testimony that cows are apparently not drinking well. It could be that this lessened or reduced milk production. The defendant asks the Court to indicate to the jury that it is the obligation of the plaintiff to prevent injury to them. They can do this by their own admission by filtering the water if they feel that it is of an objectionable nature."

As previously noted, the court gave a binding instruction to the jury that the plaintiffs were not entitled to any compensation for loss of milk production. With this element of damage out of the case, the request made by the defendant was inappropriate. The court correctly declined the request.

If we were to enlarge the scope of the exception to reach the doctrine of avoidable consequences, it would not aid the defendant in this instance. It has been convincingly held that the duty to mitigate does not apply to a landowner whose well has been permanently damaged by pollution. See *Hall* v. *Galey*, 126 Kan. 697, 271 P. 319 (1928); Annot., 19 A.L.R.2d 769, 781 (1951); 56 Am.Jur. *Waters* § 423 (cum. supp. p. 70).

Lastly, in instructing the jury concerning the plaintiffs' claim that the farm had diminished in market value through the defendant's fault, the court referred to the owner's testimony and that of the real estate broker on this issue. The court instructed on the point in terms of a willing buyer and a willing seller, ". . . and say what you would pay for this property before and after the incidents occurred."

The defendant complains that this instruction called upon the subjective feelings of the jurors in assessing the plaintiffs' damage. It deserves mention that the jurors were not cast in the role of the plaintiff, as owner, for they were called upon to say what they would pay for the property.

Taken out of context, the court's choice of words was doubtful. But it is clear from the full instructions that the jury

was called upon to determine the fair market value at the times in question by considering what a prospective buyer would be willing to pay a seller similarly disposed.

In the words of Judge Learned Hand, the value of country property in Vermont "is what it will fetch." *Smith* v. *Staso Milling Co.*, 18 F.2d 736, 739 (2nd Cir. 1927). The complete charge on this point merely posed this question in a different way. Compare, *Duchaine* v. *Ray*, 110 Vt. 313, 322, 6 A.2d 28 (1939); *Callaghan* v. *Lague Express*, 298 F.2d 349, 351 (2nd Cir. 1962); *McNamara* v. *Dionne*, 298 F.2d 352, 353 (2nd Cir. 1962).

In any event, no false standard was suggested. The amount of the total verdict for damage by pollution and fire indicates the jury was not misled to the defendant's prejudice. *Duchaine* v. *Ray, supra,* 110 Vt. at 322.

*Judgment affirmed.*