## Lynn S. Cushman and Julie P. Cushman v. Gregory E. Kirby and M. Elizabeth Kirby

[536 A.2d 550]

No. 85-255

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.), Costello, D.J. (Ret.), and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed November 13, 1987

*Emily J. Joselson* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellees.

*John R. Barrera*, Middlebury, for Defendants-Appellants.

**Dooley, J.** This is an appeal by the defendants-sellers of a home from a judgment entered, after a jury verdict in favor of the plaintiffs-buyers, in a suit for misrepresentation. We affirm.

In the spring of 1984, the plaintiffs, Lynn and Julie Cushman, entered into negotiations with the defendants, Gregory and Elizabeth Kirby, for the purchase of a single-family home in the Town of Waltham. After viewing the premises on two occasions, and agreeing on a purchase price of $102,500, the parties executed a purchase and sale agreement in April, 1984. The real property was conveyed by defendants to plaintiffs on June 12, 1984, for the agreed upon price.

Two months later, plaintiffs brought an action for misrepresentation claiming defendants had, during the course of negotiations, represented that there was good quality well water available on the land suitable for all household uses, when in fact the available well water was not of good quality. Trial by jury resulted in a verdict for plaintiffs in the amount of $6,600. Defendants now appeal the judgment entered on the verdict after denial of their mo-

tions for directed verdicts, to set aside the verdicts, and for a new trial. Defendants raise three claims on appeal: (1) the trial court erred in not granting their motions for directed verdicts because the evidence showed that no actionable misrepresentations were made by defendants; (2) the trial court erred in refusing to allow the jury to consider the separate acts or omissions of each defendant; (3) the court's charge on the issue of damages was incorrect as a matter of law.

A brief review of the facts, viewing the evidence in the light most favorable to the verdict, *Smith* v. *DeMetre*, 119 Vt. 73, 75, 118 A.2d 346, 349 (1955), will aid an understanding of the issues presented. Through the offices of a realtor, plaintiffs briefly viewed the property once in the summer of 1983, and again in March of 1984. During the second visit, which was a much more thorough tour of the house, they discovered an apparatus for a water treatment system in the basement. Since the apparatus was labelled "water conditioner," plaintiffs inquired from defendants: "What kind of water do you have?" Mrs. Kirby answered: "It's good. It's fine. It's a little hard, but the system downstairs takes care of it." Mr. Kirby, who was present during this exchange, remained silent. Satisfied with the representation that the water was simply hard, plaintiffs inquired no further about water quality.

While moving into the home after closing, plaintiffs first discovered that the well water was in fact sulfur water that smelled strongly of rotten eggs. Dismayed by this discovery, plaintiffs contacted Mrs. Kirby, who responded by stating that she forgot to tell plaintiffs that the basement water treatment system needed "Clorox." She said that when the "Clorox" level is too low, the water smells and tastes bad.

Following Mrs. Kirby's instruction, plaintiffs added "Clorox" to the system. Rather than solving the problem, the "Clorox" made the water taste like sulfur and chlorine. They then consulted a plumber, who confirmed that they had sulfur water, and explained that sulfur water is not the same as hard water. The plumber testified that hard water is a condition caused by calcium, which does not require treatment for drinking, or cause foul taste or smell, as does sulfur water. The plumber also informed plaintiffs that it would cost at least $1,000 to rehabilitate the existing system—exclusive of labor, regular maintenance, and repair costs. He also testified that even with a properly operating sys-

tem, the end result would be treated sulfur water, which even defendants testified would bring the water only to a "tolerable level of drinkability."

Based on advice from their plumber, as well as information received from other people who were not satisfied with similar sulfur filtration systems, plaintiffs determined that the most cost-effective, long-term solution to their sulfur water problem was to join with two other neighbors and hookup to the Vergennes city water supply. Thereafter, they accomplished the hookup for a cost of approximately $5,000, plus annual water bills.

## I.

Defendants' first argument is that, because of the absence of any evidence that either defendant made any affirmative misrepresentation to plaintiffs concerning water quality, the trial court erroneously denied their motions for directed verdicts. The premise of this argument is that the legal standard applicable to their conduct requires that they must have made intentional misrepresentations of existing fact before either of them could be held liable for fraud. We disagree.

This Court stated in *Crompton* v. *Beedle*, 83 Vt. 287, 75 A. 331 (1910), that:

> Where one has full information and represents that he has, if he discloses a part of his information only, and by words or conduct leads the one with whom he contracts to believe that he has made a full disclosure and does this with intent to deceive and overreach and to prevent investigation, he is guilty of fraud against which equity will relieve, if his words and conduct in consequence of reliance upon them bring about the result which he desires.

*Id.* at 298, 75 A. at 334-35. We think that, regardless of whether Mrs. Kirby's statement was actually false, and known by her to be false when it was made, the standard of conduct applicable to her was that stated in *Crompton*.

On review of the propriety of a denial of a directed verdict, this Court will view the evidence in the light most favorable to the nonmoving party, exclusive of any modifying evidence. *Lattrell* v. *Swain*, 127 Vt. 33, 38, 239 A.2d 195, 199 (1968). "In so doing we are mindful of the fact that the weight of the evidence,

the credibility of the witnesses, and the persuasive effect of their testimony are best left to the determination of the jury and are not to be reviewed by this Court." *Currier* v. *Letourneau*, 135 Vt. 196, 199, 373 A.2d 521, 524 (1977) (citations omitted).

■ Mrs. Kirby testified that at the time of the sale to the Cushmans, she was aware that the well water on the property contained sulfur to an extent requiring treatment to make it of tolerable quality. It was also uncontroverted that, despite her knowledge of the presence of sulfur in the water, Mrs. Kirby represented to the Cushmans, in response to inquiries about water quality, that the water on the property was "a little hard," but that the water treatment equipment in the basement would take care of it. There was no evidence that either defendant ever disclosed the presence of sulfur in the water. The plaintiffs testified that they relied on the truth of Mrs. Kirby's statements about the extent of the water problem when they decided to buy the house.

This evidence makes out a case of actionable fraud, under the standard of *Crompton*, 83 Vt. at 298, 75 A. at 334-35, sufficient to carry the case to the jury. It follows that it was not error to deny Mrs. Kirby's motion for directed verdict.

A somewhat different standard of conduct applies to Mr. Kirby, however, since he made no affirmative representations to plaintiffs about the quality of water. The claim for fraud against him was based exclusively on his silence while in the company of plaintiffs and Mrs. Kirby when she made the statements about water quality referred to above.

■ "Silence alone is insufficient to constitute fraud unless there is a duty to speak." *Cheever* v. *Albro*, 138 Vt. 566, 571, 421 A.2d 1287, 1290 (1980) (citations omitted); *Newell Brothers* v. *Hanson*, 97 Vt. 297, 303-04, 123 A. 208, 210 (1924). In *Cheever*, we concluded that the party sued for fraud had such a duty to speak based on "superior knowledge and means of knowledge" over the plaintiff, as well as certain contract language relevant to the disputed transaction. *Cheever*, 138 Vt. at 571, 421 A.2d at 1290 (quoting *Newell Brothers*, 97 Vt. at 303-04, 123 A. at 210). Although *Cheever* involved the sale of a corporation, rather than real estate, we think that a duty to speak based on the superior knowledge of a seller is equally present where the relationship of the parties is that of vendor and purchaser of real estate. As stated by one court:

> Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor [of real estate] is bound to disclose such facts and make them known to the purchaser.

*Lawson* v. *Citizens & Southern National Bank*, 259 S.C. 477, 485, 193 S.E.2d 124, 128 (1972); see also *Posner v. Davis*, 76 Ill. App. 3d 638, 644, 395 N.E.2d 133, 137 (1979) ("used-home seller [may be] liable for failing to disclose material defects of which he was aware at the time of sale."); *Obde* v. *Schlemeyer*, 56 Wash. 2d 449, 452, 353 P.2d 672, 674-75 (1960) (home sellers have duty to disclose material defects known at time of sale); cf. *Moncion* v. *Bertrand*, 98 Vt. 332, 339-41, 127 A. 371, 374-75 (1925) (not error for court to exclude defendant's evidence of general custom, offered to show that alleged fraudulent misrepresentation was in fact true, if viewed in light of the general custom, where such general custom not known to or disclosed by defendant to plaintiff at time of sale of farm).

Mr. Kirby testified that he was aware of the sulfur in the water at the time of the sale. He also testified that he had assisted in maintaining the water treatment system, that he had a working knowledge of the system, and that he understood the system was designed to treat sulfur in the water. Thus, by his own testimony, Mr. Kirby was fully cognizant of the quality of the water, and no question of fact existed as to his state of mind regarding this issue. Mr. Kirby further testified that he heard Mrs. Kirby represent to the plaintiffs that the water equipment took care of the "hard water" problem. As such, the only question of fact at issue with respect to Mr. Kirby's liability was whether his wife's representation constituted fraud. See *Crompton* v. *Beedle*, 83 Vt. at 298, 75 A. at 334-35. This is because if Mrs. Kirby's statement amounted to an inadequate disclosure constituting a misrepresentation, then, Mr. Kirby, based on his own knowledge, and his position as a seller of the property, had an affirmative duty to speak. This duty existed as a matter of law. See *Cheever* v. *Albro*, 138 Vt. at 571, 421 A.2d at 1290. The jury found Mrs. Kirby's statement to be a misrepresentation. Given the resolution of this sole factual issue, in conjunction with his own testimony, Mr. Kirby had a duty to speak, yet he remained silent. Under the

circumstances of the present case, this silence constituted a misrepresentation.

Mr. Kirby's liability hinged on the determination of the factual issue of whether Mrs. Kirby's representation to the plaintiffs amounted to a misrepresentation, which was a question clearly within the province of the jury. Therefore, the trial court correctly denied Mr. Kirby's motion for directed verdict.

## II.

Our conclusion with regard to the first issue also disposes of defendants' second argument. The defendants contend they were prejudiced from the court's refusal to provide for separate adjudication of their individual liability for fraud.* As noted above, however, Mr. and Mrs. Kirby had independent duties to make adequate disclosure of facts about the quality of water on the premises.

We find no prejudice from the court's submission of the case to the jury as an action against the defendants jointly. This is not a case in which one spouse clearly acting on his or her own undertook action or made a representation that a third person then attempts to link to the nonrepresenting spouse. Here the undisputed evidence was that the defendants were in proximity of each other during the critical interchange. The legal significance of Mr. Kirby's silence, in relation to Mrs. Kirby's statement, in the context of an attempt to sell their jointly owned home, was as important a question in the case as the effect of Mrs. Kirby's statement standing alone. In view of the nature of the case, it was not error for the court to submit the case to the jury in the manner in which it did.

## III.

Defendants' remaining argument is that the court's instruction on damages was erroneous. Defendants requested that the court

---

* At trial, defendants separately moved for directed verdicts, and at the close of the evidence sought two separate charges and jury verdict forms, treating plaintiffs' action as two separate claims against them individually. The court denied the motions, reasoning that the evidence indicated that the actions of the defendants in the sale of the property were jointly undertaken, as well as known and ratified by each other, thereby creating a de facto agency or partnership relationship.

instruct that plaintiffs were entitled to recover at most the cost of repairs to the treatment system. Instead, the court charged that it is a jury question whether repairs to the treatment system would fully and adequately accomplish the goal of placing plaintiffs in the same position in which they would have been had the property been sold as represented—with good quality water. If so, the court charged, the measure of damages suggested by defendants would be the maximum recovery. If not, the proper measure of damages is the difference in value of the property as represented and the value of the property as it actually existed.

■ In general, a party seeking damages for fraud is entitled to "recover such damages . . . as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded." *Larochelle v. Komery*, 128 Vt. 262, 268, 261 A.2d 29, 33 (1969). The precise measure of damages that will provide the defrauded party with the benefit of his bargain, however, depends on "the facts and circumstances surrounding the fraud, and the nature and extent of the injury suffered by the defrauded party." *Conover v. Baker*, 134 Vt. 466, 471, 365 A.2d 264, 268 (1976) (citing *Bean v. Sears, Roebuck & Co.*, 129 Vt. 278, 282, 276 A.2d 613, 616 (1971)).

■ We expressed more fully how the nature and extent of the injury suffered by a defrauded party affects the determination of the appropriate damage award in *Bean*, 129 Vt. at 282, 276 A.2d at 616:

> If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. If the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury.

The court's charge appropriately tracked the rule set forth in *Bean*. Furthermore, there was ample evidence in the record to support the jury's conclusion that the fraud in this case could not be adequately remedied by repair of the water treatment system. The court's damage instruction was not error, and the damage award must stand.

*Affirmed.*