## Carl H. White v. Arthur D. Pepin

[561 A.2d 94]

No. 87-212

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed March 17, 1989

Motion for Reargument Denied April 18, 1989

414

*Noble & Wilson*, Montpelier, for Plaintiff-Appellee.

*Keyser, Crowley, Banse & Facey*, Rutland, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from a judgment awarding the plaintiff $150,000 in consulting fees and dismissing his counterclaim against the plaintiff. We reverse.

## I.

In the early 1970s, plaintiff invented a new kind of ratchet screwdriver which he named the "Easydriver," and which he patented and began to produce through a corporation known as Creative Tools, Inc. located in Bennington, Vermont. Although the business thrived through the late 1970s, gross sales fell drastically by 1981, and in December of that year the corporation sought protection under Chapter 11 of the Bankruptcy Code. Because plaintiff had pledged substantial personal assets to secure corporate indebtedness, which funds were rapidly being depleted, he began searching for a buyer for the corporation.

In June of 1982, defendant came to Vermont with his nephew, Ronald Pepin, in search of a new business venture in which to invest. Defendant already owned and operated a successful Anheuser-Busch distributorship in Florida, and he hoped to find a new small business in Vermont which his nephew could help run and, eventually, buy from him. Learning that plaintiff was actively seeking a purchaser for his company, defendant and his

nephew immediately arranged for a meeting at the plant in Bennington.

The first meeting occurred on a Friday. Defendant was given a tour of the factory, which was apparently in full operation, and he looked over the company books. Further negotiations were conducted on Saturday and Sunday.

It is undisputed that as these negotiations began, plaintiff advised defendant that he was negotiating with another potential purchaser who was about to submit a binder to seal a purchase agreement. Defendant was told, in effect, that if he did not make a purchase offer almost immediately, plaintiff would be compelled to accept this other offer. It was under those circumstances that the negotiations were conducted. By Tuesday defendant had agreed to purchase the business for $550,000 plus $150,000 in consulting fees to be paid to plaintiff in three installments.

After taking over the business, defendant discovered numerous problems with the company about which, he claims, plaintiff either intentionally made misrepresentations during the negotiations or as to which he had a duty to disclose prior to the purchase. Although the $550,000 purchase price was paid in full, defendant refused to pay any of the $150,000 consulting fees due plaintiff under the sale agreement. When plaintiff sued for the fees, defendant counterclaimed that the sale was induced by plaintiff's fraudulent misrepresentations.

The trial court heard the evidence of plaintiff and of defendant's nephew. The transcript of an earlier deposition of the defendant, who was ill at the time of trial, was introduced in lieu of his testimony. After considering the evidence, the court found that all the representations actually made to defendant by plaintiff in the course of the negotiations were true as far as they went, and that plaintiff was under no duty to disclose the information claimed by defendant to have been fraudulently concealed. The court entered judgment for plaintiff on both his complaint and defendant's counterclaim.

Defendant raises three issues on appeal: (1) the trial court erred in concluding that the seller had no duty to disclose negative facts absent specific inquiries; (2) the court erred in concluding that a seller's statements of opinion were not actionable even if the seller did not honestly hold the opinion; and (3) the court erred in requiring defendant to verify the truth of the representations made to him in the course of the negotiations. Defendant

specifies seven representations made to him by plaintiff which, he contends, were either false or only partially true.

## II.

### A.

Under Vermont law, fraud must "consist of some affirmative act, or of concealment of facts by one with knowledge and a duty to disclose." *Standard Packaging Corp.* v. *Julian Goodrich Architects, Inc.,* 136 Vt. 376, 381, 392 A.2d 402, 404 (1978). In arm's-length transactions, where facts are equally within the means of knowledge of both parties, "neither [party] is required to speak, in the absence of inquiry respecting such matters." *Newell Brothers* v. *Hanson,* 97 Vt. 297, 303-04, 123 A. 208, 210 (1924), *quoted with approval in Cheever* v. *Albro,* 138 Vt. 566, 571, 421 A.2d 1287, 1290 (1980).

■ While there is no general duty to disclose facts absent inquiry, this Court has consistently held that liability for nondisclosure will arise when there is " 'some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.' " *Cheever* v. *Albro,* 138 Vt. at 571, 421 A.2d at 1290 (quoting *Newell Brothers,* 97 Vt. at 304, 123 A. at 210). Where such duty is present, the failure to disclose a material fact coupled with an intention to mislead or defraud rises to the level of material misrepresentation. *Id.*

This Court has not hesitated to find a duty to disclose material facts where some legal or equitable duty exists between the parties. See *Sutfin* v. *Southworth,* 149 Vt. 67, 70, 539 A.2d 986, 988 (1987) (where nature of misrepresentation or fraudulent concealment itself led party to forbear from making full inquiry, recovery will not be denied); *Cheever* v. *Albro,* 138 Vt. at 571, 421 A.2d at 1290 (where plaintiff had superior knowledge or means of knowledge, he had duty to disclose to defendant that certain items were not accurately reflected in corporate records upon which defendant relied in purchasing shares of the corporation).

In *Cushman* v. *Kirby,* 148 Vt. 571, 536 A.2d 550 (1987), defendants (husband and wife) sold their house to plaintiffs. In the course of negotiations prior to the sale, plaintiffs saw a water conditioner and asked what kind of water there was. The wife replied that the water was "fine" but "a little hard." The husband said

nothing. After plaintiffs bought the house and moved in, they learned that the water was extremely sulfuric and, even with treatment, could only be brought to a tolerable level for drinking. In finding that the trial court properly denied both defendants' motions for a directed verdict, this Court relied on *Crompton* v. *Beedle,* 83 Vt. 287, 298, 75 A. 331, 334-35 (1910):

> Where one has full information and represents that he has, if he discloses a part of his information only, and by words or conduct leads the one with whom he contracts to believe that he has made a full disclosure and does this with intent to deceive and overreach and to prevent investigation, he is guilty of fraud against which equity will relieve, if his words and conduct in consequence of reliance upon them bring about the result which he desires.

In *Cushman,* we concluded that the wife was liable because of her partial disclosure in the face of full knowledge of the situation, and that the husband, who stood by and heard the "inadequate disclosure constituting a misrepresentation," was under an affirmative duty as a seller who knew the truth to speak to the buyers. 148 Vt. at 574-77, 536 A.2d at 552-53.

Defendant here argues that under this line of cases plaintiff had a duty to disclose certain material facts which defendant only discovered subsequent to the sale. Defendant also argues that some of the representations made to him by plaintiff amounted, as in *Cushman* v. *Kirby,* to only partial disclosures, raising in plaintiff the obligation to make full disclosure of the information he possessed.

The trial court characterized this transaction as one "at arm's length." The only basis for this conclusion, apparently, was that the deal involved two "sophisticated businessmen" who had had no previous relationship. Those facts, however, should not preclude a court from looking more closely at the "relations of the parties," to ascertain whether a legal or equitable duty to disclose has arisen. See *Cheever* v. *Albro,* 138 Vt. at 571, 421 A.2d at 1290.

In this case, plaintiff told defendant that if he wanted to purchase the company, he had to do so immediately since he was on the verge of closing a deal with another potential buyer. While this representation may well have been true, it was calculated to make defendant move expeditiously through the negotiation and investigation stage of the deal. In effect, defendant was told that

if he took time to conduct a thorough independent investigation of the business, he would lose any chance at purchasing the company. It is precisely this kind of conduct which gives rise to an equitable duty to disclose all material facts and information.

The trial court's conclusion that plaintiff had no duty to disclose the business problems discovered by defendant after the sale was erroneous.

### B.

■ In addition to concluding that plaintiff had no duty of disclosure to defendant, the trial court found that all the representations actually made by plaintiff to defendant were true. Without examining in detail each of the seven representations alleged by defendant to have been fraudulent, we note that an examination of the record shows that the court failed entirely to make any findings about two alleged misrepresentations despite testimony in support of them.

First, the defendant claimed that plaintiff represented to him that the company had $240,000 in accounts receivable which were "good and collectible." He then offered testimony showing that those accounts were subject to offsetting claims totaling $98,000 which were not reflected in the statements showed defendant and about which plaintiff said nothing. Second, defendant adduced testimony that plaintiff told him the company was breaking even at the current sales level, only to find that it was losing $50,000 a month at the time. Plaintiff presented no evidence contradicting these statements.

In addition, defendant claims that several representations found by the trial court to be true were, in fact, only partial disclosures. These statements, he claims, were fraudulent in that he was induced by plaintiff to rely on them knowing defendant would not fully investigate the information due to the time pressure under which the negotiations were conducted. The trial court found, for example, that plaintiff represented the machinery to be generally in good working order, but had no duty to disclose to defendant that substantial maintenance work was necessary for the machinery to operate properly at capacity.

The trial court's failure to make any findings as to two alleged material misrepresentations made by plaintiff and relied upon by

defendant was error, particularly in view of the fact that these allegations were supported by uncontroverted evidence.

## III.

Defendant also claims that the trial court erred in concluding that plaintiff did not misrepresent the business prospects for the company's newest product, a "shock-absorbing hammer" because plaintiff's statements were in the nature of opinions relating to future events, which are not actionable. Defendant argues that to escape liability for such opinions our case law requires them to be honestly held. Plaintiff, he contends, did not honestly hold a good opinion of the future prospects of the hammer, since plaintiff had previously attempted to market the hammer at a national trade show and had not received one order for the product.

Our case law is clear that representations of opinion are actionable in certain circumstances. In *Proctor Trust Co.* v. *Upper Valley Press, Inc.*, 137 Vt. 346, 405 A.2d 1221 (1979), this Court held that statements of opinion may be actionable where they constitute part of a scheme to defraud — i.e., where the opinion is offered for the purpose of " 'inducing another to act or refrain from acting in reliance thereon.' " *Id.* at 351, 405 A.2d at 1224-25 (quoting *Fayette* v. *Ford Motor Credit Co.*, 129 Vt. 505, 511, 282 A.2d 840, 844 (1971)); accord Restatement (Second) of Torts § 525 (1976).

The trial court found that plaintiff's assertions about the hammer were not actionable because they were statements of opinion. That reasoning is not consistent with our law. Further, the trial court failed to consider the statements within the "partial disclosure" rule. See *Cushman* v. *Kirby*, 148 Vt. at 576, 536 A.2d at 553.

## IV.

Defendant's third issue on appeal was whether the trial court erred in placing upon him a burden of investigation as to the truthfulness of plaintiff's representations. Plaintiff contends, however, that a standard of due diligence was imposed in *Cheever* v. *Albro*, 138 Vt. at 572, 421 A.2d at 1290, and was appropriate here in light of the court's conclusion that this was a deal between two sophisticated businessmen. The trial court agreed with plaintiff, stating that most of the facts of which defendant complained

were readily discoverable through review of the Chapter 11 bankruptcy pleadings or other investigative techniques prior to the purchase.

In *Cheever,* we held that the concealing of information by one possessing superior knowledge of facts material to the contract which would otherwise be unavailable "in the exercise of . . . due diligence" constituted fraud. *Id.* The facts in *Cheever* dictated that in order to ascertain whether the seller had "superior knowledge" — thereby giving rise to a duty to disclose — the buyer's level of knowledge, measured in part by his due diligence in investigating the underlying facts, became relevant. Thus, what constitutes due diligence must be weighed against the facts of each case. Here, plaintiff placed defendant in a position where it was impossible, if he wanted to make a deal, to do any investigation other than what he did: examine the books and records of the corporation as provided by plaintiff, tour the factory on two separate occasions, and question plaintiff and other company representatives as to the viability of the business.

Plaintiff would have us distinguish this case from "consumer fraud" cases like *Lunnie* v. *Gadapee,* 116 Vt. 261, 265, 73 A.2d 312, 315 (1950), in which the Court stated that

> when it is established that a [party] has been induced to act by fraudulent misrepresentations, it is no excuse for the defendant, nor does it lie in his mouth to say, that the plaintiff might, but for his own neglect, have discovered the wrong and prevented its accomplishment.

Where, as here, plaintiff placed defendant in a position calculated to discourage independant investigation, and where defendant actively sought out information from plaintiff himself as well as from corporate books and records, it would be inequitable now to require that defendant shoud have inquired further. The "duty" to investigate, such as it is, is not necessarily determined by the experience of the parties to a deal, but by their conduct and the circumstances under which they make their decisions.

*Reversed and remanded for a new trial.*