# State of Vermont v. Stephen C. Brooks

[658 A.2d 22]

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

No. 93-010

Opinion Filed January 27, 1995

246

*Scot Kline*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Bonnie Barnes* and *William K. Sessions III* of *Sessions, Keiner, Dumont & Barnes*, Middlebury, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals his conviction of involuntary manslaughter following a jury trial. We affirm.

In May 1986, defendant purchased a home in Burlington that was equipped with a driveway heater. Hot water, heated by gas in the unit's boiler, flowed through a system of pipes beneath the driveway to melt snow and ice. The unit was located in the attached garage and could be turned on by a switch. Exhaust fumes from the system were supposed to exit through a vent located on the backside of the garage.

On November 27, 1987, defendant turned on the driveway heater before running an errand. While he was gone, another occupant, Jill McDermott, and her infant became ill from noxious fumes that had emanated from the garage. When defendant returned home, McDermott asked him to take her and the baby to the hospital. Defendant took them to the emergency room where they were examined and released; no diagnosis was made.

Defendant thought the fumes were caused by a plumbing problem and called C & L Plumbing and Heating (C & L). C & L sent an employee, Ben Linden, to inspect the heater. Linden determined that a dislodged flap in the termination kit was preventing proper exhaust. He explained the malfunction to defendant and told him that repairs should be made and safety features added. Linden then called Vermont Gas Systems (VGS) and met with one of its employees to examine the system. After doing some additional work on the unit, both servicemen decided the gas should remain off until repairs were made. The VGS employee told McDermott the system was not safe to operate and that she was lucky to be alive, "because it was carbon monoxide." McDermott relayed these comments to defendant.

That night, the owner of C & L called defendant and told him that the heater had been improperly installed and VGS would call about necessary repairs. A VGS supervisor also called and explained the dangers of the condition and agreed that it should be repaired. Approximately one month after the accident, Linden returned to defendant's home to service other appliances. When Linden asked defendant about the heater, he admitted that nothing had been done. Linden told defendant he was playing "Russian roulette," to which defendant remarked that "he would have to call the gas company."

In May 1988, defendant hired a real estate agent to sell his home. Defendant did not mention the heater's history to the agent. Instead, defendant instructed the agent to turn the heater on, then off, when demonstrating it to prospective buyers. The heater was a highlighted feature in agent's marketing materials. In August 1988, the agent recommended Karl Sklar, a part-time carpenter, to replace some rotten siding. While Sklar was at defendant's home, defendant told

Sklar that the heater had problems and asked Sklar if he would work on the heater. Sklar declined because he lacked experience with such systems.

In July 1988, the agent showed the house to Linda Cifarelli and her parents, the von Albrechts, who were helping their daughter and son-in-law purchase a home. While touring the home, the agent explained and demonstrated the driveway heating system by turning it on for approximately five minutes. During their second showing, defendant, who was present to answer questions, explained and demonstrated the driveway heater again, but did not mention its prior problem or faulty condition. The von Albrechts made an offer to purchase the house which defendant accepted. The buyers then arranged a professional home inspection. During the inspection, defendant demonstrated the heater, but did not explain how it worked or mention its history.

At the September closing, defendant insisted that the Cifarellis return to the house with him for a more detailed showing because "he knew things [the inspector] wouldn't know." Defendant showed Linda Cifarelli and her parents the central vacuum system, the drainage system, and the driveway heater. When showing the heater, he told them it was not necessary to run it for more than two hours.

On the evening of December 9, 1988, Linda Cifarelli and her husband, John, turned on the driveway heater because it was snowing. They put their two young daughters to bed upstairs and followed shortly after. A house guest, Andrew Csermak, stayed awake to watch television. After a while, Csermak became dizzy and nauseous, and eventually vomited. Csermak cracked a window and fell asleep on the downstairs couch. When Csermak awoke at noon, he was concerned because the Cifarellis were not yet awake. He went upstairs and discovered that only the infant daughter was still breathing. Csermak called 911.

Upon arrival, the police and firemen discovered the bodies of John and Linda Cifarelli and their four year old daughter. The police also found the garage door dripping with condensation and the driveway heater running. The infant and Csermak were taken to the hospital and diagnosed with carbon monoxide poisoning. Autopsies revealed that Linda and John Cifarelli and their daughter died of carbon monoxide poisoning. Defendant was charged with three counts of involuntary manslaughter by reckless endangerment and convicted by a jury in October 1992.

Defendant raises several issues on appeal. First, he challenges as erroneous the jury instructions pertaining to (1) the mens rea of

recklessness, (2) a seller's legal duty to disclose material defects about a house, and (3) the defense of intervening causation. Second, he claims that his motion for acquittal was improperly denied because there was insufficient evidence to prove the essential elements of recklessness and the existence of his legal duty to act. Third, defendant contends that Vermont's manslaughter statute is unconstitutionally vague as applied to the facts of this case. Finally, he argues that the court abused its discretion in denying his unopposed motion to sequester the jury.

## I. Jury Instructions

Defendant's objections to the three jury instructions were not properly preserved following the charge and are only reviewable under a plain error standard. *State v. Percy*, 158 Vt. 410, 418, 612 A.2d 1119, 1125 (1992). Jury instructions should be viewed in their entirety and must be well balanced and fair. *State v. Chambers*, 144 Vt. 377, 382, 477 A.2d 974, 978 (1984). Error will be assigned only when the entire charge undermines our confidence in the verdict, and only in extraordinary cases will we find plain error. *State v. Johnson*, 158 Vt. 508, 513-14, 615 A.2d 132, 135 (1992).

█ Defendant first contends that the court's definition of reckless intent was erroneous. Defendant was charged with involuntary manslaughter by reckless endangerment. 13 V.S.A. § 2304; *State v. Stanislaw*, 153 Vt. 517, 522, 573 A.2d 286, 289 (1990) (involuntary manslaughter is a killing caused by an unlawful act, but not accompanied by an intent to take life). Because the underlying unlawful act charged was reckless endangerment, 13 V.S.A. § 1025, defendant's conviction could only be sustained upon finding reckless intent. *Stanislaw*, 153 Vt. at 525, 573 A.2d at 291 (mens rea of recklessness or criminal negligence may sustain conviction for involuntary manslaughter). Defendant argues that the instruction defining recklessness was flawed because it incorporated both the criminal negligence and recklessness standards but did not distinguish between the two. Defendant maintains that while recklessness requires an actual awareness of the risk and of the resulting harm, criminal negligence requires a less stringent showing that the actor should have known of the risk and harm. According to defendant, the failure to distinguish between the two levels of intent amounted to plain error, because the jury could have convicted him if it found only that he should have known either that the heater was not repaired, or that the heater posed a risk.

We have endorsed the Model Penal Code's definition of recklessness, which explains:

> A person acts recklessly with respect to a material element of an offense when he *consciously* disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

*State v. O'Connell*, 149 Vt. 114, 115 n.1, 540 A.2d 1030, 1031 n.1 (1987) (quoting Model Penal Code § 2.02(c) (defining recklessly)) (emphasis added). In contrast, criminal negligence occurs when the actor should be aware that a substantial and unjustifiable risk exists or will result from his conduct. *Stanislaw*, 153 Vt. at 525, 573 A.2d at 291. Disregarding the risk amounts to a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. *Id.*

Contrary to defendant's suggestion, both recklessness and criminal negligence require an objective view of the risk; the difference is one of degree. Compare Model Penal Code § 2.02(2)(c) (defining recklessness) with *id.* § 2.02(2)(d) (defining negligence); see also 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, at 329-36 (1986). The more critical distinction between recklessness and criminal negligence is the actor's subjective awareness of the risk. Recklessness requires a conscious disregard of the risk. *O'Connell*, 149 Vt. at 115 n.1, 540 A.2d at 1031 n.1. In contrast, criminal negligence results when an actor is unaware of the risk which the actor should have perceived. *Stanislaw*, 153 Vt. at 525, 573 A.2d at 291.

The court properly instructed the jury to objectively assess the risk and to determine whether defendant consciously disregarded that risk. For further clarification, it referred the jury to the reckless endangerment instruction, which expressly required a finding that defendant "actually knew from the circumstances then existing that the heater had not properly been repaired." If there was any flaw in the instruction, it stemmed from the court's use of the term "reasonable-person" instead of "law-abiding person" when describing the standard for objectively assessing the nature of the risk. This does not amount to plain error. See *State v. Pelican*, 160 Vt. 536, 538–39, 632 A.2d 24, 26 (1993) (plain error must seriously affect substantial rights and unfairly prejudice jury's deliberations).

Next, defendant challenges as erroneous the court's instruction that the vendor of real estate has a legal duty to disclose undiscoverable material defects to the buyer. Defendant argues that he had no such legal duty, because the case establishing this duty was decided after he sold his home in 1988. See *Silva v. Stevens*, 156 Vt. 94, 103-04, 589 A.2d 852, 857-58 (1991) (real estate vendor has duty to disclose material defects otherwise undiscoverable). Defendant also insists that the instruction amounted to a directed verdict for two reasons. First, the jury was not instructed that it must determine whether defendant had a duty to disclose the defect. See *State v. Valley*, 153 Vt. 380, 390, 571 A.2d 579, 584 (1989) (where involuntary manslaughter is based on reckless omission, existence of legal duty to act is essential element of case and must be charged). Second, the instruction did not remind the jury of the State's burden to prove the existence of the duty beyond a reasonable doubt.

Defendant's arguments are without merit. A duty to speak had been recognized in the context of real estate transactions before defendant sold his home. See *Sutfin v. Southworth*, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987) (recognizing duty to speak in real estate transaction where seller knew raw sewage was being deposited on neighboring land and buyer was ignorant of condition and had no incentive to inspect adjacent property); *Cushman v. Kirby*, 148 Vt. 571, 575, 536 A.2d 550, 552 (1987) (recognizing that a duty to speak exists as a matter of law where seller has superior knowledge and relationship of the parties is that of vendor and purchaser of real estate). The instruction was an accurate statement of existing law; therefore there was no error. *Percy*, 158 Vt. at 419, 612 A.2d at 1125.

Moreover, we disagree with defendant's argument that the court directed a verdict on the issue of duty. The court did not tell the jury that defendant had a duty to plaintiff. It stated the law regarding the duty to disclose and instructed the jury to apply the facts to the law. The court also expressly and repeatedly informed the jury of the State's burden in making the charge as a whole. There was no need to repeat the State's burden after each issue or element. See *Pelican*, 160 Vt. at 540, 632 A.2d at 26. There was no error.

In the alternative, defendant argues that even if the jury was properly charged on the existence of a duty, he was entitled to have certain defenses included in that charge. He contends that an instruction should have explicitly precluded criminal liability if the jury found that either defendant did not know the heater was not working or reasonably believed that the buyers would discover the

defect. Defendant maintains that failure to include this instruction amounted to plain error.

We agree that defendant was entitled to have the jury resolve the truth or falsity of defendant's claim that he did not know the heater had not been repaired. We believe, however, that the jury was so instructed. See *State v. Brisson*, 119 Vt. 48, 53, 117 A.2d 255, 258 (1955) (defendant entitled to instruction appropriate to case made by his evidence). Although not articulated as a fact precluding liability, the instructions gave the jury ample opportunity to consider defendant's primary defense. Separate instructions on recklessness and intervening causation required the jury to determine, beyond a reasonable doubt, whether defendant actually knew the heater was not fixed at the time of sale. *State v. Day*, 149 Vt. 165, 167, 540 A.2d 1042, 1043 (1987) (court is free to use its own language as long as charge fully and fairly represents issues, theories and claims presented by the evidence). Defendant's second rationale, that he did not know that the defect was undiscovered, was not an issue presented at trial. Throughout the trial, defendant maintained that he thought the heater was fixed. Defendant did not present evidence either that he expected the buyers to discover the defect or that the buyers should have discovered the defect. The trial court was not required to charge matters not covered by the evidence. *Id.*

Defendant's third challenge attacks the court's instruction on independent intervening causation. Defendant argues that the instruction prohibited acquittal even if the jury concluded that others knew of the danger and failed to warn the buyers. Defendant contends that evidence that VGS or C & L negligently failed to repair the heater and that the professional inspector failed to discover the flaw was presented, and therefore, warranted an explicit instruction on intervening cause. Again, we review for plain error.

In *State v. Yudichak*, we held that "[o]ne cannot be convicted of manslaughter in the presence of an intervening cause of death, unless that intervening cause is found to be a natural result of one's acts." 151 Vt. 400, 403, 561 A.2d 407, 409 (1989). A defendant will be criminally responsible for the course of events which naturally flow from his act or omission, unless the act of another breaks the chain of causation set in motion by the original reckless act. *Id.* An act of another breaks the chain of causation when it is not a natural and foreseeable result of defendant's acts. *Id.* After reiterating the *Yudichak* standard almost verbatim, the court directed the jury to

consider the acts or omissions of VGS and C & L as a potential intervening cause. To identify when their alleged negligence would cease to be an intervening cause, the court instructed that "the state must show on this issue that the defendant actually knew that the gas heater had not been repaired when he sold the property." Although defendant would have preferred a different articulation, the instruction was an accurate statement of the law and, as such, did not amount to error. *Percy*, 158 Vt. at 419, 612 A.2d at 1125.

## II. Insufficiency of the Evidence

■■ Defendant challenges the court's denial of his motion for acquittal, claiming there was insufficient evidence to convict on the essential elements of recklessness and a legal duty. The State argues that defendant waived this claim because he did not move for acquittal at the close of the evidence. *State v. Dion*, 154 Vt. 420, 425, 578 A.2d 101, 104 (1990) ("to preserve a claim of insufficiency of the evidence, defendant must make a motion in the trial court for judgment of acquittal under V.R.Cr.P. 29(a) at the close of the evidence"); *State v. Norton*, 139 Vt. 532, 534, 431 A.2d 1244, 1245 (1981) (unless defendant moves for judgment of acquittal at end of trial, insufficiency of evidence claim will not be preserved). But even if a Rule 29(a) motion is not made, a defendant may properly raise a claim based on insufficiency of evidence by moving under V.R.Cr.P. 29(c). Rule 29(c) states:

> If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged . . . . It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

The plain language of Rule 29(c) allows a postverdict motion for acquittal regardless of whether a similar motion was made under Rule 29(a). See Reporter's Notes, V.R.Cr.P. 29(c). Defendant properly raised his claim by filing his motion within ten days after the jury verdict was delivered. See *State v. Bressette*, 136 Vt. 315, 317, 388 A.2d 395, 396 (1978); accord *State v. Winters*, 136 Vt. 469, 470, 392 A.2d 429, 430 (1978). To the extent that *Dion, Norton* and subsequent cases are inconsistent with *Bressette* or today's clarification, they are overruled.

In reviewing the denial of defendant's motion for judgment of acquittal, we consider whether the evidence, taken in a light most

favorable to the State and excluding modifying evidence, is sufficient to fairly and reasonably support a finding of guilt beyond a reasonable doubt. *State v. Robar*, 157 Vt. 387, 391, 601 A.2d 1376, 1378 (1991). Evidence that leaves guilt uncertain or dependent upon conjecture is insufficient. *Id.* Defendant contends, and we agree, that proof of both recklessness and the existence of a legal duty hinged on finding that he actually knew the driveway heater had not been repaired. Defendant argues, however, that there was insufficient evidence to prove beyond a reasonable doubt that he knew the driveway heating unit had not been repaired. We disagree.

Defendant knew the heater was malfunctioning and emitting fumes when he took McDermott and her infant child to the hospital in November 1987. Representatives from C & L and VGS testified that they explained the exhaust problem to defendant and told him that the system was dangerous and needed repairs. Although there was conflicting testimony about who was responsible for the repairs, resolving this confusion was less important than determining when, and if, defendant thought the repairs were completed.

Defendant's position was that he thought the heater was fixed by VGS shortly after, if not immediately following, the November 1987 accident. Other witnesses, however, testified to conversations with defendant about repairing the heater which refute defendant's position. The C & L employee, Linden, testified that one month after the accident, defendant told him the heater was still unrepaired. Linden then told defendant he was "playing Russian roulette." Defendant suggests that he construed Linden's conversation with him to mean that Linden had fixed the problem. Linden testified, however, that a reasonable person would not have thought the problem was fixed. In the summer of 1988, at the recommendation of defendant's real estate agent, defendant spoke with Karl Sklar. According to Sklar's testimony, defendant mentioned that there was a problem with the heater and asked Sklar if he would work on it. There was no evidence that either VGS or C & L worked on the heater while the home was on the market or after Sklar's visit. In sum, there was sufficient evidence fairly and reasonably supporting a finding that defendant actually knew the heater had not been repaired when he sold his home to the Cifarellis. With this critical finding and other supporting evidence, the jury could reasonably conclude that defendant had the requisite reckless intent. There was sufficient evidence to support a finding that defendant's failure to disclose the existence of the malfunctioning heater before selling his home

amounted to a conscious disregard of a substantial and unjustifiable risk.

 There was also sufficient evidence that defendant breached his legal duty to disclose the heater's defect. "'Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor [of real estate] is bound to disclose such facts . . . .'" *Cushman*, 148 Vt. at 576, 536 A.2d at 553 (quoting *Lawson v. Citizens & S. Nat'l Bank*, 193 S.E.2d 124, 128 (S.C. 1972)). Defendant knew that the heater could emit noxious fumes into the home, if unattended, and that it was unrepaired when his home was on the market. Defendant also accompanied both Linda Cifarelli and the home inspector on their tours of the home. In each instance, he demonstrated the heater, but did not mention its history. The jury could reasonably conclude that defendant knew that the Cifarellis, despite two walk-throughs and a home inspection, were unaware of the heater's dangerous condition. Thus, there was sufficient evidence upon which the jury could find that defendant failed to disclose a material defect when he had a duty to disclose them.

 Defendant suggests that his continued use of the heater during the winter of 1987 was persuasive evidence, rising to the level of reasonable doubt, that he thought the heater was repaired or that he was unaware of the substantial risk. We disagree. The jury could have reasonably construed such evidence to have the opposite effect. Because defendant understood the exact nature of the problem, the jury could reasonably have inferred that defendant ran the heater only for brief periods to prevent exhaust back-up. His instructions to the real estate agent to run the heater only briefly suggest as much. Additional evidence that defendant checked the exhaust cylinders before and after using the heater reasonably implied that defendant was himself wary of using the machine. Defendant's motion for judgment of acquittal was properly denied.

### III. Constitutional Challenge

 Defendant argues that unlawful-act manslaughter predicated on reckless endangerment is unconstitutionally vague when applied to the facts of this case. See 13 V.S.A. § 2304 (a person who commits manslaughter shall be fined not more than $3,000, or imprisoned for not less than one year nor more than 15 years, or both); *id.* § 1025 (a person recklessly engages in conduct when that person places or may

place another person in danger of death or serious bodily injury). Under the void-for-vagueness doctrine, a penal statute must define a criminal offense with sufficient clarity to inform a person of ordinary intelligence of proscribed conduct and to discourage arbitrary and discriminatory enforcement. *State v. Cantrell*, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989).

Defendant argues he did not have fair warning that his conduct could result in a manslaughter charge where the existence of a legal duty to disclose had not been definitively established and where he believed the heater to be working properly. As applied to the facts of this case, defendant's argument is without merit. The recognition of a duty to disclose material defects to the buyers predated the sale of defendant's home. See *ante* part I. The evidence indicates, and the jury found, that defendant's omission amounted to reckless endangerment because he knew the heater was not repaired when he sold the home. As applied to defendant, the statute is not unconstitutionally vague.

Defendant also argues that the scope of involuntary manslaughter predicated on reckless endangerment is prone to arbitrary and discriminatory enforcement. In support of this argument, defendant points to the trial court's comment that "the variety of fatal conduct sufficient to support a conviction for involuntary manslaughter is probably limited only by [humanity's] ability to devise new forms of danger." The indefiniteness of what will amount to reckless conduct does not necessarily permit arbitrary enforcement. See *State v. Purvis*, 146 Vt. 441, 442, 505 A.2d 1205, 1207 (1985). Although we cannot specify every set of facts which constitute reckless conduct, the recklessness standard is sufficiently precise to prevent it from being arbitrarily applied. The scope of conduct which may be deemed reckless is sufficiently narrowed by the requirement that the risk, when objectively viewed, amounts to a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation. *O'Connell*, 149 Vt. at 115 n.1, 540 A.2d at 1031 n. 1; see *State v. Roy*, 140 Vt. 219, 229-30, 436 A.2d 1090, 1095 (1981) (a reasonable person would comprehend the proscribed conduct). The statute is not unconstitutionally vague.

## IV. Motion to Sequester

Defendant argues that the court abused its discretion when it denied his unopposed motion to sequester the jury because it failed to

consider the circumstances in light of *State v. Brisson*, 124 Vt. 211, 201 A.2d 881 (1964). In *Brisson*, we stated:

> When dealing with the integrity of the jury [defendant] has only to show the *existence of circumstances capable of prejudicing* the deliberative function of the jury. He is not required to prove that they actually did so. (citation omitted).
>
> Events or circumstances which might not be of concern where a jury is under the control and scrutiny of the court itself during trial, might be factors of greater weight when their effect on a jury at large in the community is considered.

*Id.* at 215, 201 A.2d at 883 (emphasis added). Defendant contends that he merely needed to present circumstances capable of prejudicing the jury. In support of his motion, defendant argued that there were "parties who may as the trial progresses seek to put a spin on any media coverage so as to change the public opinion." Defendant's counsel also noted that it was his experience that television coverage of criminal trials results in a carnival atmosphere and that the power of television entices jurors to "cheat a bit" on their oath. Counsel also contended that the only way to ensure the absence of juror taint was sequestration. Defendant pointed to substantial pretrial publicity, the novel theory of criminal liability and the presence of television cameras in the courtroom as circumstances capable of prejudicing the jury.

■ ■ While *Brisson* is the correct standard under which defendant's motion should be reviewed, defendant misconstrues that standard. *Brisson* requires that a defendant demonstrate a nexus between the events or circumstances and juror taint. *Brisson*, 124 Vt. at 214, 201 A.2d at 883 (motion for jury sequestration properly denied because defendant made "no showing that any untoward event occurred in connection with any part of the panel, so as to cloud their impartiality"); *State v. Dragon*, 135 Vt. 168, 170, 376 A.2d 12, 13 (1977) (a demonstrable showing of prejudice required, mere speculation of juror prejudice insufficient). Here, defense counsel relied on his own experience and belief that publicity caused taint. The only evidence that he presented was that there had been extensive media coverage of both the Cifarellis' deaths and the trial. Extensive publicity and the presence of media are not enough to establish this nexus. If it were, practically all juries assigned to high profile cases would require sequestration. See *Holt v. United States*, 218 U.S. 245, 251 (1910) (if

mere opportunity for prejudice or corruption raises presumption that they exist, it would be hard to maintain a jury trial under the conditions of the present day); *State v. Piskorski*, 419 A.2d 866, 876 (Conn. 1979) (extensive pretrial publicity does not itself demonstrate danger of juror prejudice).

Moreover, defendant has not demonstrated any resulting prejudice. During voir dire, members of the panel were extensively questioned regarding their exposure to the media and their predispositions to the case based on that exposure. The judge systematically warned them about the media when they recessed. Upon their return, he systematically questioned the panel. Finally, notwithstanding the continued publicity, defendant did not renew his objections regarding possible juror taint. The trial court properly denied the motion to sequester.

*Affirmed.*