Florence MORTON, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,**
Defendant.

No. 2:97–CV–279.

United States District Court,
D. Vermont.

June 30, 1999.

John Carl Holler, Hull, Webber & Reis, Rutland, VT, for Florence Morton, plaintiff.

Robert D Rachlin, Downs, Rachlin & Martin, P.C., Burlington, VT, David William Gartenstein, Downs Rachlin & Martin, Brattleboro, VT, for Allstate Insurance Company, defendant.

*OPINION AND ORDER*

SESSIONS, District Judge.

In this lawsuit by an employee against her employer alleging breach of contract, intentional and negligent misrepresentation, intentional infliction of emotional distress and promissory estoppel, Defendant Allstate Insurance Company ("Allstate") has moved for summary judgment on the breach of contract, misrepresentation and intentional infliction of emotional distress claims. For the reasons that follow, Allstate's motion is granted in part and denied in part.

*I. Factual Background*

In May 1980 Florence Morton was hired by Allstate as an insurance retail agent ("RA") at the Sears Catalog store in Rutland, Vermont. The employment contract between Morton and Allstate is known as an R830 compensation agreement.

In 1984 Allstate introduced its neighborhood office agent ("NOA") program. Under the NOA program, the agent leases her own office, and is provided an office expense allowance ("OEA") to assist with expenses incurred in maintaining the office. The OEA is calculated based on the agent's previous year's business, and the agent is responsible for any expenses incurred in excess of the OEA. According to Allstate, the purpose of the new program was to create entrepreneurial incentive for Allstate's agents. According to Morton, the purpose of the new program was to cut costs by shifting operating costs to its employee agents. Allstate's management consultants for its new "distribution strategy" advised it that NOAs would need to increase their productivity "very substantially" in order to maintain their current income levels. The consultants also warned Allstate that the OEA was inadequate and could result in "unsettling" reductions to agents' net incomes. Booz–Allen & Hamilton Inc. letter dated April 25, 1984 (paper 30, ex. E–3).

In the late 1980's Morton became aware of plans to close the Rutland store, and she began investigating her options, which included becoming a NOA. By 1991, most RAs in Vermont had become NOAs. In the spring of 1991 Morton received a business analysis review in which her productivity was deemed to require immediate improvement. She was advised that the minimum level of sales required for her position was 80% of market averages for all lines of insurance. Morton's productivity as an RA was compared with the productivity of NOAs. Morton asserts she was advised that the best way for her to bring her production up was to enter the NOA program.

During discussions concerning Morton's possible transfer to the NOA program, Allstate provided her with a projection of her gross and net revenues under the program. Allstate calculated that if Morton did $80,761 worth of business, her OEA reimbursement would be more than $16,328. It projected her annual expenses at more than $49,356, for a net before-tax revenue of more than $47,733. Allstate did not alert Morton to the likelihood that if she incurred expenses over her OEA, she would be subject to the alternative minimum tax when she submitted her personal tax returns.

On September 1, 1991, Morton became a NOA agent, and her compensation agreement was amended to reflect her new status. Her compensation agreement as amended provided that as a NOA she continued to be a full-time employee of Allstate, and that she could not return to her former agent status.

In Morton's first year as a NOA her commissions exceeded $90,000, yet her OEA was approximately $4,000 less than Allstate had calculated. Her after-tax income was drastically reduced because she was unable to deduct all of her business expenses.

Morton's claims against Allstate include breach of express and implied contractual terms, intentional or negligent misrepre-

sentation, and intentional infliction of emotional distress.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute over a material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir. 1989).

A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## III. *Discussion*

### A. *Intentional and negligent misrepresentation*

■ The second and third counts in Morton's complaint plead claims for intentional and negligent misrepresentation. A claim for intentional misrepresentation must allege: "an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepre-

sentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to [her] damage." *Lewis v. Cohen,* 157 Vt. 564, 568, 603 A.2d 352, 354 (1991) (citations omitted). "Fraud may be committed by the suppression of truth as well as by the suggestion of falsehood." *Cheever v. Albro,* 138 Vt. 566, 571, 421 A.2d 1287, 1290 (1980) (quoting *Newell Bros. v. Hanson,* 97 Vt. 297, 304, 123 A. 208, 210 (1924)). Under the circumstances of a particular case, there may be a duty to disclose information, based on a relationship of confidence or trust between the parties, or based on one party's superior knowledge or means of knowledge. *Id.* Where such a duty is present, the failure to disclose material facts coupled with an intent to mislead or defraud constitutes a material misrepresentation. *White v. Pepin,* 151 Vt. 413, 416, 561 A.2d 94, 96 (1989).

■ A party may be liable for the tort of negligent misrepresentation if the party supplies false information for the guidance of others in their business transactions upon which they justifiably rely, the party fails to exercise reasonable care or competence in obtaining or communicating the information, and pecuniary loss results. *McGee v. Vermont Federal Bank, FSB,* 726 A.2d 42, 44 (Vt.1999) (citing Restatement (Second) of Torts § 552(1) (1977)). What is reasonable care or competence depends on the circumstances of the particular case. *Limoge v. People's Trust Co.,* 719 A.2d 888, 891 (Vt.1998).

■ Morton claims that the NOA program was "a fraud perpetrated by [Allstate] ... for the purpose of shifting [its] operating costs to its employees." Pl.'s Response to Def.'s Mot. for Summ.J. at 10. According to Morton, Allstate expected to reduce its operating costs substantially by paying its agents less under this cost-sharing program. Allstate, touting this "entrepreneurial opportunity," would allow its employee agents to invest in their own offices, theoretically increasing their in-

come potential, where in actuality Allstate knew that an agent's income potential under the NOA program was lower. Allstate had been advised that NOAs would have to increase their productivity by up to 60% to maintain their income. Morton also claims that Allstate knew that the OEA it provided would be insufficient for NOAs to meet their office expenses, requiring agents to invest their own money and reducing their net income. Allstate also knew that agents who had to supplement their OEA with their own funds could face adverse tax consequences by being subjected to the alternative minimum tax, further reducing their net income. Allstate did not inform its agents of these factors. Finally, Morton claims that Allstate made up fictitious production requirements and threatened her job if she did not meet them, in an effort to persuade her to enter the NOA program.

Allstate, of course, disputes these contentions. It claims that any information it gave Morton in connection with her decision to become a NOA was opinion, not fact. It stresses that the NOA revenue and expense calculations it provided Morton were projections, not promises. Although Morton acknowledges that a projection is not a statement of fact, she argues that she was entitled to rely on Allstate's representation of the mathematical calculation used to obtain the OEA figures. The question of whether a statement is one of fact or opinion is for a jury to determine. *Silva v. Stevens,* 156 Vt. 94, 103 n. 1, 589 A.2d 852, 857 (1991).

■ Morton also asserts that Allstate had a duty to disclose information, for example that she might be subject to the alternative minimum tax if her office expenses exceeded her OEA. Whether or not Allstate was under a duty to disclose depends on whether Morton can show facts permitting a jury to conclude that a relationship of trust existed between the parties, or that Allstate had superior knowledge or means of knowledge. "Where one

has full information and represents that he has, if he discloses a part of his information only, and by words or conduct leads the one with whom he contracts to believe that he has made a full disclosure and does this with intent to deceive and overreach and to prevent investigation, he is guilty of fraud." *Cushman v. Kirby,* 148 Vt. 571, 574, 536 A.2d 550, 552 (1987). An employer may owe an employee entering into a business transaction with it a duty of care to disclose matters which are known to the employer and necessary to prevent its partial or ambiguous statements from being misleading, as well as facts about which the employee is mistaken, if the employee would reasonably expect disclosure. *Pearson v. Simmonds Precision Products, Inc.,* 160 Vt. 168, 170–71, 624 A.2d 1134, 1136 (1993). *See also Lubore v. RPM Associates, Inc.,* 109 Md.App. 312, 674 A.2d 547, 556 (1996) (partial disclosure which misleads because of incompleteness gives rise to employer's duty to disclose); *Martin v. Hale Products, Inc.,* 699 A.2d 1283, 1288 (Pa.Super.Ct.1997) (employer is not entitled to use concealment of material facts as recruiting tool).

■ As to the negligent misrepresentation claim, whether Allstate failed to exercise reasonable care or competence in communicating information about its NOA program is an issue for a jury to decide, "unless the facts are so clear as to permit only one conclusion." *Limoge,* 719 A.2d at 891.

Because material facts remain in dispute, and there is evidence in the record from which a jury could infer that Allstate intentionally or negligently misled Morton, summary judgment is inappropriate. *See Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 33 (2d Cir.1997).

### B. *Breach of contract*

■ Morton also asserts that Allstate's conduct in coercing her to enter the NOA program constituted a breach of her R830 contract, in that it violated a covenant of

good faith and fair dealing inherent in every contract. Under Vermont law, an "implied covenant of good faith and fair dealing prevails in every contract." *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1025 (2d Cir.1995) (quotation marks and citation omitted). "Each party to a contract makes the implied promise that each will not do anything 'to undermine or destroy the other's rights to receive the benefits of the agreement.'" *Southface Condominium Owners Ass'n, Inc. v. Southface Condominium Ass'n, Inc.*, 733 A.2d. 55 (Vt.1999) (quoting *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993)).

In the context of an at-will employment relationship, an employee's contractual rights are few, and as a result the implied covenant offers relatively little protection. *Marcoux-Norton v. Kmart Corp.*, 907 F.Supp. 766, 776 (D.Vt.1993). *See Ross v. Times Mirror, Inc.*, 164 Vt. 13, 23, 665 A.2d 580, 586 (1995) (no recovery for breach of implied covenant of good faith and fair dealing for dismissed at-will employee claiming a right to tenure). Morton claims that her R830 contract gave the right not to be terminated without good cause, and that she therefore was not an at-will employee.

It is unnecessary, for purposes of the disposition of this motion, to determine whether Morton's employment contract modified her status of at-will employee. The covenant of good faith and fair dealing protects the integrity of an agreement between parties. If a modification of that agreement is fraudulently obtained, the aggrieved party may have a claim for breach of the covenant, as well as a fraud claim. *See Carmichael*, 161 Vt. at 208, 635 A.2d at 1216 (action for breach of covenant essentially a tort action). To the extent that Morton's breach of good faith claim presents an alternative theory of recovery on the same facts as her misrepresentation claims, it survives summary judgment for the same reasons as do the misrepresentation claims.

Morton also alleges breach of express representations made in the introduction section of her contract. Specifically she claims that Allstate promised to reduce her service work, but between 1990 and 1992 closed or consolidated its regional operation centers, resulting in a tripling of her service work. Allstate's introduction states in relevant part:

> This agreement was carefully planned to provide you with financial opportunity and security.... As an Allstate Agent you'll enjoy advantages not available in any other insurance company: the unique relationship with Sears, the most aggressive advertising and sales promotion support in the insurance business today, a complete line of products created by a young "maverick" company eager to try new ideas, and modern mechanized office procedures that speed handling and reduce your service work.

Allstate Agent Compensation Agreement, p. 1 (paper 30, ex. A).

General statements of company policy do not automatically become binding agreements. *Ross*, 164 Vt. at 20, 665 A.2d at 584. "Only those policies which are definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself will be enforced." *Id.* No promise to bind itself to specific treatment of Morton's service responsibilities can reasonably be implied from these statements. Accordingly, to the extent that Morton's breach of contract claim is based on breach of express contractual terms, Allstate's motion for summary judgment is granted.

### C. Intentional infliction of emotional distress

To establish a claim for intentional infliction of emotional distress, a plaintiff "must demonstrate that extreme and outrageous conduct, done intentionally or with reckless disregard of the possibility of causing emotional distress, resulted

in the suffering of extreme emotional distress." *Farnum v. Brattleboro Retreat, Inc.*, 164 Vt. 488, 497, 671 A.2d 1249, 1256 (1995). The standard is high: "the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community." *Id.*

 From the record evidence no reasonable jury could find that Allstate's conduct, accepting Morton's version of events as true and with all inferences drawn in her favor, was so outrageous as to surpass the bounds of tolerable conduct, nor that Morton's emotional suffering, although genuine, has been extreme. Morton's allegations that Allstate secretly and deceptively set out to increase its profits by reducing agent incomes and shifting its operating costs to them, and that Allstate lied about the nature of the NOA program to coerce agents into participating, do not as a matter of law constitute conduct so atrocious as to satisfy the first element of the tort of intentional infliction of emotional distress.

Moreover, Morton has asserted that as a result of Allstate's conduct she has suffered "sleeplessness, nervousness, irritability, depression, and colitis." Morton Aff. at ¶ 19. The Court does not doubt that any one or a combination of these conditions may produce extreme emotional suffering. However, in response to a motion for summary judgment, Morton must offer some evidence that her allegations are more than conclusory or speculative. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998). This she has not done. Accordingly, Allstate is entitled to summary judgment on Morton's fourth cause of action.

## IV. *Conclusion*

For the reasons stated above, Allstate's Motion for Summary Judgment (paper 28) is granted in part and denied in part. Morton's fourth cause of action, for intentional infliction of emotional distress, is dismissed.