NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 30

No. 24-AP-081

| | |
|---|---|
| Shayne Lynn | Supreme Court |
| | |
| v. | On Appeal from<br>Superior Court, Chittenden Unit,<br>Civil Division |
| | |
| Slang Worldwide, Inc. et al. | March Term, 2025 |

Helen M. Toor, J.

Pietro J. Lynn of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Plaintiff-Appellant.

Justin B. Barnard of Dinse P.C., Burlington, and John P. Sefick of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., New York, New York, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **EATON, J.**  Plaintiff Shayne Lynn appeals the trial court's dismissal of plaintiff's complaint for failure to state a claim. Plaintiff argues that his complaint, which alleges fraud and negligent misrepresentation by defendants, is sufficient to meet Vermont's pleading standards and that the trial court erred when it held otherwise. We affirm.

¶ 2.    Plaintiff's complaint alleged the following facts, which we take as true for the purpose of resolving the motion to dismiss. Plaintiff was the founder and majority owner of a successful Vermont cannabis business: High Fidelity, Inc. In late 2020, defendants Peter Miller and Christopher Driessen, who controlled defendant Slang Worldwide, Inc., approached plaintiff and proposed creating a joint venture or merger between High Fidelity and Slang. During the

course of their conversations with plaintiff, Miller and Driessen told plaintiff that Slang was "in excellent financial shape," was "financially sound," and "had a bright economic future." They "promised that [Slang] would support an $18 million dollar investment into [High Fidelity] to financially support [plaintiff's] growth plans." Miller and Driessen also sent plaintiff public financial data, which did not indicate that Slang was "teetering on the edge of insolvency."[1] They eventually persuaded plaintiff to enter into a merger agreement that involved exchanging High Fidelity shares for shares in Slang and the creation of a soon-to-be established subsidiary: Slang Vermont, Inc. The parties signed the merger agreement in June 2021.

¶ 3.     However, Slang's financial situation was not as rosy as Miller and Driessen's statements seemed to indicate. In fact, while the negotiations were ongoing, Slang was losing money and needed an influx of cash to support its ongoing operations. Specifically, Slang required valuable assets like High Fidelity to attract lenders.

¶ 4.     Plaintiff did not discover Slang's true financial situation until a board of directors meeting a few weeks after the merger. At that meeting, plaintiff learned that Slang needed to borrow $18 million to survive. The terms of that loan were onerous and ceded significant control to the lenders. Soon afterwards, plaintiff was terminated from running Slang's Vermont operations to cut costs.

¶ 5.     Plaintiff then filed suit, asserting that he would not have agreed to merge High Fidelity with Slang had he known Slang's true financial status, and that he suffered significant financial loss as a result of Miller and Driessen's misrepresentations. Plaintiff claimed that

---

[1] Defendants assert that they provided plaintiff with publicly available data that did, in fact, accurately demonstrate Slang's financial situation. They ask that this Court take judicial notice of regulatory filings from the Canadian Securities Exchange Listing that "provide an unvarnished picture of [Slang's] financial status." We decline to do so. When reviewing a motion to dismiss we "assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." Fleurrey v. Dep't of Aging & Indep. Living, 2023 VT 11, ¶ 4, 217 Vt. 527, 292 A.3d 1219 (quotation omitted).

defendants Slang Worldwide, Inc., Slang Vermont, Inc., and Miller and Driessen, engaged in fraud and negligent misrepresentation.

¶ 6.     Defendants moved to dismiss plaintiff's complaint.  The court granted their motion, holding that plaintiff failed to allege any actionable misrepresentations that would support a claim of fraud, and failed to allege the existence of any duty or justifiable reliance on the statements to support his claim of negligent misrepresentation.  This appeal followed.

¶ 7.     On appeal, plaintiff argues that he adequately stated claims for fraudulent inducement and negligent misrepresentation.[2]

¶ 8.     This Court reviews "decisions on a motion to dismiss de novo under the same standard as the trial court," and we "will uphold a motion to dismiss for failure to state a claim only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief."  Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009 (quotation omitted).  When analyzing the motion, we "assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences derived therefrom, and assume as false all contravening assertions in the defendant's pleadings."  Id. (citation omitted).  However, the Court is "not required to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  Rodrigue v. Illuzzi, 2022 VT 9, ¶ 33, 216 Vt. 308, 278 A.3d 980 (quotation omitted).

I.  Fraudulent-Inducement Claim

¶ 9.     We begin with plaintiff's claim of fraudulent inducement.  To maintain a claim for fraudulent inducement, the plaintiff must show "an intentional misrepresentation of existing fact, affecting the essence of the transaction," where "the misrepresentation was false when made and

---

[2]  In his brief, plaintiff also argues that the trial court was correct in ruling that his claims were not otherwise barred pursuant to a merger clause and a no-further-representations clause in the merger agreement between High Fidelity and Slang.  Because we hold that plaintiff fails to state claims of fraudulent inducement and negligent misrepresentation, we need not and do not reach this issue.

3

known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." Union Bank v. Jones, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980). To survive a motion to dismiss, typically "the threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low." Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.) (quotation omitted). Nonetheless, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." V.R.C.P. 9(b).

¶ 10. Plaintiff's fraudulent-inducement claim rests on three categories of statements made by Miller and Driessen. Plaintiff alleges that Miller and Driessen misrepresented that Slang was "financially sound," had a "bright economic future," and that its finances were "in excellent shape"; promised Slang would invest $18 million in High Fidelity; and provided "publicly available" documents to plaintiff that were "intentionally and materially misleading" and "did not reflect that the company was about to fail." We address each of these categories of statements below.

¶ 11. First, we consider Miller and Driessen's alleged descriptions of Slang as "financially sound," having a "bright economic future," and being "in excellent shape." In analyzing claims of fraud, this Court has consistently distinguished statements of fact from statements of opinion. " '[M]isrepresentation of the former can be fraud, but misrepresentation of the latter cannot,' unless the misrepresentation of opinion is part of a scheme to defraud." Pettersen v. Monaghan Safar Ducham PLLC, 2021 VT 16, ¶ 20, 214 Vt. 269, 256 A.3d 604 (quoting Winey v. William E. Dailey, Inc., 161 Vt. 129, 133, 636 A.2d 744, 747 (1993)). Trade talk or "puffery" are statements of opinion which cannot be the basis of a claim for fraud because "the truth or falsity of [the statements] cannot be precisely determined." Heath v. Palmer, 2006 VT 125, ¶ 14, 181 Vt. 545, 915 A.2d 1290 (quoting Avery v. State Farm Mut. Auto. Ins., 835 N.E.2d 801, 846 (Ill. 2005) (ruling that advertisement of "quality replacement parts" was mere commercial puffery and was

4

therefore not actionable));  see Nichols v. Lane, 93 Vt. 87, 87-88, 106 A.592, 593 (1919) (comparing "there is no better land in Vermont" that was puffery with "you can keep as many as forty cows in the pasture" that was representation of ascertainable fact).

¶ 12.    Miller and Driessen's statements describing Slang's financial condition as "sound," "bright," and "excellent" squarely "fall within the category of opinion as subjective evaluations" because they are not "objectively verifiable statements of fact" about Slang's financial situation. See Heath, 2006 VT 125, ¶ 14 (describing representations of "quality construction" and "exceptional value" as opinion, as well as collecting cases and providing other examples of puffery and opinions including "quality replacement parts," "most outstanding value," "premium quality").  Miller and Driessen's opinions about Slang's financial outlook were not actionable misrepresentations of material fact sufficient to create a claim of fraudulent inducement.

¶ 13.    Miller and Driessen's alleged promise to invest $18 million in High Fidelity likewise cannot support a fraud claim.  "[M]ere promises to act in the future cannot constitute the requisite misrepresentation of existing fact that is essential to fraud [unless] there is [a] present intention to act contrary to the promise."  Pettersen, 2021 VT 16, ¶ 20 (quotations omitted). Plaintiff does not allege in the complaint that Miller and Driessen intended to renege on the $18 million-dollar-investment promise at the time that they made it.  Plaintiff argues that "[t]he 'reasonable inference' to be drawn at this stage, in the light most favorable to [plaintiff], and prior to factual development in discovery, is that such false promise was made with a present intent to renege on the promise."  Absent an express allegation to that effect, however, we decline to infer this material element of plaintiff's fraud claim.  See V.R.C.P. 9(b) (requiring allegations of fraud to be stated with particularity).  Plaintiff's complaint evinces a "mere promise[] to act in the future" and, therefore, did not allege a misrepresentation of existing fact.  This promise of future action did not support a claim of fraudulent inducement.

¶ 14.    Finally, plaintiff argues that "the intentionally misleading financial data" that Miller and Driessen provided to plaintiff "quite obviously constitutes a 'statement of fact' and is thus not mere puffery." Certainly, materially misleading financial data could be an actionable basis for a claim of fraud. However, when averring fraud or mistake, plaintiffs are required to state "the circumstances constituting fraud or mistake . . . with particularity." V.R.C.P. 9(b). Plaintiff's general assertion that he was provided with "misleading financial data," without a description of the particular information or data that was misleading, is insufficiently broad to satisfy this pleading requirement. "Rule 9(b) requires that plaintiffs identify the particular statements . . . that they claim were fraudulent." Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, ¶ 73, 212 Vt. 612, 238 A.3d 608. That specificity is absent here. Consequently, plaintiff's claim that he was provided with misleading financial data did not support his claim of fraudulent inducement because it was not pled with particularity.

¶ 15.    Plaintiff argues that, even if each individual statement alleged in his complaint did not amount to fraud, Miller and Driessen's misrepresentations about Slang's financial future, their false promise to invest in High Fidelity, and the misleading data were collectively sufficient to support his claim that they engaged in a scheme to defraud him. "Misrepresentation of opinion can be the basis of a fraud claim if it is part of a scheme to defraud." Winey, 161 Vt. at 133, 636 A.2d at 747. Similarly, "[w]hile a promise, standing alone, does not afford the basis of actionable fraud, it is not improper to consider broken promises where there was a general scheme to defraud of which the promises were steps in a series of actions constituting the scheme." Fayette v. Ford Motor Credit Co., 129 Vt. 505, 510, 282 A.2d 840, 843 (1971) (quotation omitted).

¶ 16.    In cases where an opinion or a promise was sufficient to support a fraud claim, there was also a material misrepresentation of existing facts or a present intent not to follow through on the promise. See, e.g., Harponola Co. v. Wilson, 96 Vt. 427, 433-34, 120 A. 895, 897-98 (1923) (considering promise in combination with "the original fraud" of factually misrepresenting

6

product's value); Proctor Trust Co. v. Upper Valley Press, Inc., 137 Vt. 346, 351, 405 A.2d 1221, 1224 (1979) (considering opinions "which [plaintiffs] knew were extremely likely to turn out to be false" combined with income projections based on highly unreliable data which "closely resemble misrepresentations of existing fact"); Fayette, 129 Vt. at 510, 282 A.2d at 843 (considering promise combined with steps taken by defendant indicating no intention of following through on promise). Without such allegations here, plaintiff fails to state a claim for a fraudulent scheme.

¶ 17. Plaintiff's complaint is insufficient as a matter of law to support a claim of a scheme to defraud. None of the statements alleged by plaintiff are fraudulent misrepresentations of material fact. They are puffery, trade talk, and an unspecified allegation of misleading data. Plaintiff cannot create a fraudulent scheme by combining an unsubstantiated promise with puffery and a general allegation of misleading financial data. Plaintiff has failed to allege fraudulent inducement.

## II. Negligent-Misrepresentation Claim

¶ 18. Plaintiff also argues that the court erred in concluding that he was unable to prevail on his negligent-misrepresentation claim because he failed to allege that Slang's financial status was unavailable to him.

¶ 19. This Court has adopted the definition of negligent misrepresentation from the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

7

Howard v. Usiak, 172 Vt. 227, 230-31, 775 A.2d 909, 912-13 (2001) (quotation omitted). Justifiable reliance is a key aspect of a claim of negligent misrepresentation and any complaint must plead facts that support such reliance. Id.

¶ 20. Whether a party acted in justifiable reliance on the information provided is determined by an objective standard: "plaintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by[,] plaintiffs." Burgess v. Lamoille Hous. P'ship, 2016 VT 31, ¶ 22, 201 Vt. 450, 145 A.3d 217 (alteration, quotation, and emphasis omitted). In McGee v. Vermont Federal Bank, FSB, we held that the plaintiffs did not state a claim for negligent misrepresentation because they failed to adequately allege justifiable reliance. 169 Vt. 529, 531, 726 A.2d 42, 45 (1999) (mem.). Specifically, "[n]owhere in the [plaintiff's] pleadings do they indicate that they could not verify the information" provided to them. Id. Similarly, in Burgess v. Lamoille Housing Partnership, we held that the plaintiff failed to demonstrate justifiable reliance where the evidence showed that there was relevant information readily available to him in statutes that demonstrated the falsity of the information provided by the defendant. 2016 VT 31, ¶ 23. As is clear from these cases, the pleading must incorporate some facts based on the representations made or the relationship between the parties that supports justifiable reliance for purposes of a negligent-misrepresentation claim.

¶ 21. Plaintiff argues that he did not need to allege that the information about Slang's financial status was unavailable to him, relying on Lunnie v. Gadapee, 116 Vt. 261, 73 A.2d 312 (1950). There, this Court stated that when "a plaintiff has been induced to act by fraudulent misrepresentations, it is no excuse for the defendant, nor does it lie in his mouth to say, that the plaintiff might, but for his own neglect, have discovered the wrong and prevented its accomplishment." Id. at 265, 73 A.2d at 315. Lunnie is a fraudulent-misrepresentation case and is therefore not relevant to plaintiff's negligent-misrepresentation claim. Moreover, we later

8

explained that although Lunnie "emphasized that it is not a defense that 'plaintiff might, but for his own neglect, have discovered the wrong,' " we have also held that " 'where it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry,' such an inquiry must be made." Silva v. Stevens, 156 Vt. 94, 105, 589 A.2d 852, 858 (1991) (first quoting White v. Pepin, 151 Vt. 413, 420, 561 A.2d 94, 98 (1989); and then quoting Winton v. Johnson & Dix Fuel Corp. 147 Vt. 236, 241, 515 A.2d 371, 374 (1986)).

¶ 22. Plaintiff argues that he has sufficiently pled justifiable reliance for the purposes of the notice pleading standards by alleging that "the financial data made available to him was intentionally materially misleading," that "he took reasonable steps to determine the financial status of [Slang]," and that had he "known the true financial status of [Slang], he would never have agreed to merge with it." We disagree. This Court is "not required to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Rodrigue, 2022 VT 9, ¶ 33 (quotation omitted). Plaintiff's allegations that the documents and information were "false," not "true," and "misleading," and that plaintiff acted "reasonably" to ascertain their veracity are mere restatements of the legal elements required for a claim of negligent misrepresentation. Without specific factual allegations to support these conclusory statements, they are insufficient to prevent dismissal of his claim.

¶ 23. Furthermore, plaintiff's assertion that he would not have merged with Slang had he known its financial situation is not sufficient to demonstrate justifiable reliance, which, as described above, requires both that the plaintiff is unaware of the truth and that the truth is "not within the knowledge of" the plaintiff. Burgess, 2016 VT 31, ¶ 22 (emphasis omitted). We decline to infer the missing element—i.e., that he was unable to learn Slang's real financial situation— into plaintiff's complaint. Plaintiff did not allege that he justifiably relied on the information given

9

to him by Miller and Driessen.  Plaintiff therefore failed to state a claim for negligent misrepresentation.

    <u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice