Filed 07/17/25

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-03770

---

Conservation Law Foundation, Inc. v. Julia S. Moore, in an official capacity as Secretary of Natural Resources

---

### Opinion and Order on the State's Motion to Dismiss

Plaintiff the Conservation Law Foundation Inc. (CLF) brought this case under one of the two citizen-suit provisions of the Vermont Global Warming Solutions Act of 2020 (the "Act") to challenge the July 2024 determination by Defendant Ms. Julia Moore, the Secretary of the Agency of Natural Resources (ANR), not to update rules adopted by ANR to implement the Vermont Climate Action Plan adopted by the Vermont Climate Council and meet the goals of the Act.[1]  10 V.S.A. § 593(d); *see* Letter from Secretary Moore to the Council (dated July 1, 2024).  CLF charges that ANR failed to conduct a proper review to determine whether the rules needed to be updated, insofar as it relied upon faulty modeling, and came to the wrong conclusion.[2]  CLF asks the Court to order ANR to cure this deficiency and to update its rules by a date certain—evidently presuming that a

---

[1] Because the Secretary is sued in her official capacity only, the Court refers to Defendant as ANR or the State.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."); *Karcher v. May*, 484 U.S. 72, 78 (1987) ("We have repeatedly recognized that the real party in interest in an official-capacity suit is the entity represented and not the individual officeholder.").

[2] In its complaint, at Count III, CLF also claimed that ANR failed to conduct statutorily required public hearings.  The State argues, in its motion, that Count III reflects a misunderstanding as to application of the hearing requirement.  CLF did not contest this in opposition to the State's motion.  At oral argument on June 17, 2025, CLF clarified that it has withdrawn Count III.  Accordingly, the Court does not address it.

properly conducted review process necessarily will reveal that updates are necessary to meet the appropriate emission reduction targets of the Act.[3]

The State seeks dismissal. It argues that CLF is improperly using a citizen-suit provision that is designed for the enforcement of statutory deadlines into one that broadly contemplates litigation over the substance of ANR's decision-making under the Act.

### I. Procedural Standard

A motion to dismiss for failure to state a claim faces a high bar. "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (citing *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557, 558–59 (mem.) (internal quotation, brackets, and ellipses omitted). Courts, however, are not required to accept "'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308, 326 (quoting *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1, 10 (quotation omitted)).

---

[3] CLF represents that the consultant it hired to determine whether the rules are sufficient to meet the 2025 target determined that they are not. CLF denies that it is claiming that ANR must use CLF's preferred modeling. Its claim is merely that the modeling ANR used is faulty.

The record for Rule 12(b)(6) purposes generally is limited to the four corners of the complaint and any attachments to it. *See Nash v. Coxon*, 152 Vt. 313, 314–15 (1989) ("[I]f matters outside the pleadings are presented and not excluded by the court, the motion to dismiss must be treated as one for summary judgment." (internal quotation and citation omitted)). There is a limited exception: documents sufficiently referred to and relied upon in the complaint may properly be considered in a motion to dismiss even if not attached to the complaint. *See Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 609.

II.     Analysis

For dismissal purposes, the dispute in this case boils down to competing interpretations of the Act. Both parties argue that the plain language controls; neither argues that there is any ambiguity. The Court agrees that the State's motion can be resolved on the plain language of the Act.

"Our primary objective when construing a statute 'is to give effect to the intention of the Legislature.' In effectuating that intent, '[w]e examine the plain language of the statute, and if this language is clear and unambiguous, we enforce the statute according to its terms.'" *Maple Run Unified Sch. Dist. v. Vermont Hum. Rts. Comm'n*, 2023 VT 63, ¶ 13, 218 Vt. 496, 504 (citations omitted). "As a corollary of this principle, we resort to other tools of statutory construction—such as legislative history—only if the plain language of the statute is unclear or ambiguous."[4] *In re 204 N. Ave. NOV*, 2019 VT 52, ¶

[4] The State relies on certain evidence of legislative history to bolster the statutory interpretation it advances. The Court does not interpret that use of legislative history to be a concession that the statute is ambiguous, and the State confirmed at argument that it does not contend that there is any ambiguity. As the statutory language at issue in

5, 210 Vt. 572, 575; *see also Reynolds v. State*, 2025 VT 34, ¶ 20 (declining to consider legislative history where statutory language is clear); *In re Appeal of H.H.*, 2020 VT 107, ¶ 18, 214 Vt. 1, 10 ("Where that statutory language is clear and unambiguous, we look no further.").

To interpret a statute properly, the Court "will not excerpt a phrase and follow what purports to be its literal reading without considering the provision as a whole, and proper construction requires the examination of the whole and every part of the statute." *TD Banknorth, N.A. v. Dep't of Taxes*, 2008 VT 120, ¶ 15, 185 Vt. 45, 53 (citation omitted); *see also Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, ¶ 5, 181 Vt. 26, 29 ("We construe all parts of the statutory scheme together, where possible, as a harmonious whole, and '[w]e will avoid a construction that would render the legislation ineffective or irrational.'") (citations omitted)).

### A. General Statutory Framework

The Global Warming Solutions Act of 2020 amended 10 V.S.A. § 578 and adopted 10 V.S.A. §§ 590–594. Prior to the Act, § 578 provided certain greenhouse gas reduction "goals." The goals were specific but largely aspirational. The Act turned those goals into specific reductions that are required to be met by 2025, 2030, and 2050. The Act relies on those expected reductions in various ways.

The Act created a 23-member Vermont Climate Council. The Council was charged with adopting an initial Vermont Climate Action Plan and updating it every 4 years. "The Plan shall set forth the specific initiatives, programs, and strategies that the State

---

this case is clear, the Court does not consider the evidence of legislative history proffered by the State.

shall pursue to reduce greenhouse gas emissions; achieve the State's reduction requirements pursuant to section 578 of this title; and build resilience to prepare the State's communities, infrastructure, and economy to adapt to the current and anticipated effects of climate change." 10 V.S.A. § 591(b)(2); *see also* 10 V.S.A. § 592(b). The Council also is charged with, *inter alia*, identifying "the means to accurately measure: (A) the State's greenhouse gas emissions and progress towards meeting the reduction requirements pursuant to section 578 of this title." 10 V.S.A. § 591(b)(3). It also recommends "necessary legislation to the General Assembly." 10 V.S.A. § 591(d).

ANR was charged with adopting rules by December 1, 2022, to implement the Plan and "achieve the 2025 greenhouse gas emissions reduction requirement pursuant to section 578 of this title." 10 V.S.A. § 593(b). Prior to doing so, it was required to "conduct public hearings across the State." 10 V.S.A. § 593(c).

Of import here, by July 1, 2024, it was required to "review and, if necessary, update the rules required by subsection (b) of this section in order to ensure that the 2025 greenhouse gas emissions reduction requirement pursuant to section 578 of this title is achieved." 10 V.S.A. § 593(d). This is the review at issue in this case.

In the future, by July 1, 2026, ANR is *required* to adopt new rules that implement the Plan and that will achieve the 2030 target. 10 V.S.A. § 593(e). Between 2026 and 2030, not less than every 2 years, it will be required to review its rules and update them if necessary. 10 V.S.A. § 593(f). By July 1, 2040, ANR is required to adopt new rules that implement the Plan and that will achieve the 2050 target. 10 V.S.A. § 593(g). Between 2040 and 2050, not less than every 2 years, it will be required to review its rules and update them if necessary. 10 V.S.A. § 593(h).

The Council is charged with providing "guidance to [ANR] concerning the form, content, and subject matter of rules to be adopted pursuant to section 593 of this chapter." 10 V.S.A. § 591(b)(4).

B.    Statutorily Permitted Citizen Suits

The Act authorizes two types of citizen suits against ANR. One type plainly is intended to police *whether* ANR's rules achieve § 578 targets. 10 V.S.A. § 594(b). Such an action must be filed within 1 year "after the Vermont Greenhouse Gas Emission Inventory and Forecast published pursuant to section 582 of this title indicates that the rules adopted by the Secretary have failed to achieve the greenhouse gas emissions reductions requirements pursuant to section 578." 10 V.S.A. § 594(b)(2). In that sort of proceeding: "If the court finds that the rules adopted by the Secretary pursuant to section 593 of this chapter are a substantial cause of failure to achieve the greenhouse gas emissions reductions requirements pursuant to section 578 of this title, the court shall enter an order remanding the matter to the Secretary to adopt or update rules that achieve the greenhouse gas emissions reductions requirements consistent with this chapter." 10 V.S.A. § 594(b)(3). This case is not a § 594(b) suit.

This is a § 594(a) suit. Subsection 594(a) provides that any "person may commence an action based upon the failure of the Secretary of Natural Resources to adopt or update rules *pursuant to the deadlines in section 593 of this chapter*." 10 V.S.A. § 594(a) (emphasis added). Such a suit must be filed within 1 year of the missed deadline. 10 V.S.A. § 594(a)(2). "If the court finds that the Secretary has failed to adopt or update rules *pursuant to the deadlines in section 593 of this chapter*, the court shall enter an order directing the Secretary to adopt or update rules." 10 V.S.A. § 594(a)(3)

(emphasis added). A § 594(a) suit, unlike a § 594(b) suit, is *expressly* subject to Vt. R. Civ. P. 75 procedure. 10 V.S.A. § 594(a)(1).

### C. Permissible Breadth of § 594(a) Actions

Given the language of the Act and the two citizen suit provisions, the State's argument that § 594(a) suits are intended to enforce deadlines rather than to police the substance of ANR's rules or its decisions about whether it needs to update those rules is highly compelling. Disputes as to the ultimate success of the rules in meeting § 578 targets are plainly the subject matter of § 594(b). And in that sort of proceeding, the Legislature did not delegate to the person bringing suit the task of determining whether a target was not met. Such a conclusion, the predicate for the suit, must appear in a § 582 Vermont Greenhouse Gas Emission Inventory and Forecast. A § 594(b) action cannot be brought based on a person's own forecast that the rules, in the future, will miss a target.

Section 594(a) suits, instead, are targeted on the statutory *deadlines* for ANR's adoption or updating of rules. They are, as the State puts it, "deadline suits." Such deadline suits are not unusual in the environmental context. *See, e.g., WildEarth Guardians v. Jackson*, 885 F. Supp. 2d 1112, 1115 (D.N.M. 2012) ("[W]hen the EPA misses a statutorily-imposed deadline, its failure is reviewed in the context of a nondiscretionary-duty suit under section 304(a)(2)."); *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52 (D.D.C. 2006) ("When an agency has failed to meet the statutory deadline for a nondiscretionary act, the court may exercise its equity powers 'to set enforceable deadlines both of an ultimate and an intermediate nature.'" (citation omitted)).

Section 594(a) says nothing about review related to the substance of the rules and periodic determinations as to whether they should be updated. It is clear on the face of the complaint in this case that ANR conducted its review and determined that it did not need to update the rules, all by the statutory deadline of July 1, 2024. CLF does not seek to enforce the deadline as set out in § 594(a). To the contrary, it seeks to inject itself into the substance of ANR's review and rulemaking processes. There is no statutory basis for such a suit.

This interpretation of § 594(a) is also supported by and consistent with 10 V.S.A. § 594(a)(1), which says that § 594(a) suits are subject to Vt. R. Civ. P. 75. Actions under Rule 75 relief in the nature of one of the extraordinary writs of prohibition, *certiorari*, or mandamus. Reporter's Notes, Vt. R. Civ. P. 75 ("Rule 75(a) . . . does not purport to say what determinations are reviewable, but provides a procedure applicable whenever county court review is provided by the particular statute establishing an agency or is available as a matter of general law by proceedings in the nature of certiorari, mandamus, or prohibition.").

There is no palpable basis for any prohibition or *certiorari* review in this case, and CLF makes no such claim. The only potentially applicable writ is mandamus, a remedy in which the Court "require[s] a public officer to perform a simple and definite ministerial duty imposed by law." *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999). Such review is exceedingly narrow, however.

"A court can issue a writ of mandamus . . . only under certain circumstances: (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of

the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law." *Petition of Fairchild*, 159 Vt. 125, 130 (1992); s*ee also Bargman v. Brewer*, 142 Vt. 367, 369 (1983) (noting that a ministerial act is one "regarding which nothing is left to discretion" (citation omitted)); *State v. Forte*, 159 Vt. 550, 555 (1993) (duty appropriate for mandamus must be "simple and definite") (citation omitted)).  "In exceptional cases, mandamus may be available to enforce a 'discretionary decision where a public official or body has engaged in an arbitrary abuse of power which amounts to a virtual refusal to act or to perform a duty imposed by law.'  However, in 'each case where we have endorsed mandamus relief due to an arbitrary abuse of power, we have required that the alleged arbitrary abuse of discretion amount to a practical refusal to perform a certain and clear legal duty.'" *Office of the Auditor of Accounts v. Office of the Attorney General*, 2025 VT 36, ¶ 50 (citations omitted).

At all events, mandamus must be predicated on a "clear and certain right to the action sought by the request for a writ." *See Skiff v. South Burlington School District*, 2018 VT 117, ¶ 25, 208 Vt. 564, 575 (residents' mandamus claim against school district improperly founded on nonexistent constitutional right); *Wool v. Menard*, 2018 VT 23, ¶ 18, 207 Vt. 25, 34–35 (inmate's mandamus claim about competitive bidding properly predicated on statutory right to telephone services at "lowest reasonable cost"); *Petition of Fairchild*, 159 Vt. at 130 (adjacent landowners' mandamus claim against Town properly predicated on right to enforce relevant judicial decision and Town zoning regulations).

The statutory provisions set out in § 594(a) do not provide the types of clear directives that can be enforced through mandamus. Under the Act, ANR must consider the upcoming benchmark, examine its rules, examine potentially competing scientific information, determine whether any updates are needed, and, if necessary, update the rules in one fashion or another. Such tasks are far from simple and ministerial duties. They surely are anything but.

There is a manifest distinction between an officer undertaking a required examination by a specific deadline and determining to not take action, and an officer ignoring her duty to undertake the examination at all, ignoring the deadline. Whether ANR meets a clear statutory deadline *is* simple and ministerial. That presumably is why § 594(a) suits are expressly subject to Rule 75 and § 594(b) suits are not. In the latter, the Court must make what likely would be a complex substantive determination "that the rules adopted by the Secretary pursuant to section 593 of this chapter are a substantial cause of failure to achieve the greenhouse gas emissions reductions requirements pursuant to section 578 of this title." 10 V.S.A. § 594(b)(3). Such is not the stuff of mandamus review.

Nor does the statute provide any guidelines for how a Court might resolve a § 594(a) suit if, hypothetically, it did contemplate substantive review of ANR's decision as to the need for rulemaking and any such rules. Such a standard, as to the rules, is provided in a § 594(b) suit. The absence of such a standard or guideline under § 594(a) invariably would embroil the Court in policy disputes, weighty exercises of discretion, and the evaluation of complex evidentiary matters—issues far afield of ordinary mandamus review.

The foundation for CLF's argument is § 594(a)'s use of the word "necessary." But it cannot bear the weight.[5] The determination of the necessity of rulemaking in this complicated area of science and policy is delegated to ANR. ANR made that decision in a timely manner. If § 594(a) permitted a person to challenge the necessity of rulemaking, it is hard to see how it would not permit such a person also to challenge any eventual rulemaking as to whether the chosen rules satisfied the necessity standard or whether alternative rules might better ensure compliance with the Act's targets. Section 594(a) does not contemplate such probing review in a citizen suit for narrowly cabined mandamus relief. Substantive review of rules and their efficacy is available under § 594(b), which provides standards and boundaries confining its scope.

There is simply no statutory basis for the review that CLF seeks as to whether ANR's determination was sufficient under § 594(a). ANR acted according to the deadlines of the Act, and there is no statutory basis for any order compelling ANR to adopt or update its rules at this time.

D.    Amendment

In the event of dismissal, CLF requested an opportunity to amend the complaint without describing the nature of any proposed amendment or explaining why such an amendment would not be futile. Further, it has offered no bases for amendment or

---

[5] To the extent that CLF argues that the Court is required by the dismissal standard to accept its allegation that ANR's necessity determination is wrong, the Court notes that, as far as the allegations of the complaint go, many of the relevant ones are assertedly "based upon information and belief" and, at least to some extent, are conclusory. When considering a Rule 12(b)(6) motion to dismiss, "the Court is 'not required to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Lynn v. Slang Worldwide, Inc.*, 2025 VT 30, ¶ 8; *see also Morisseau v. Hannaford Bros.*, 2016 VT 17, ¶ 22, 201 Vt. 313, 320; *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1, 10.

pointed to a pleading deficiency that might be remedied through amendment. Given those considerations, the Court sees no ground upon which to afford a period for amendment.

Conclusion

For the foregoing reasons, the State's motion to dismiss is granted.

Electronically signed on Friday, July 11, 2025, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge