Filed 03/04/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04160

| Bernard J. Miller d/b/a Statewide Drywall, LLC v. SD Ireland Concrete Construction Corp. d/b/a SD Ireland Properties et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss Counterclaims (Motion: 2)
Filer:      David E. Bond
Filed Date:    December 11, 2025

This case involves a general contractor, SD Ireland Concrete Construction Corp. d/b/a SD Ireland Properties ("SD Ireland"), and its former drywall subcontractor, Bernard J. Miller d/b/a Statewide Drywall, LLC ("Miller"). Miller has moved to dismiss SD Ireland's counterclaims. SD Ireland opposes. Counsel represent both parties. For the reasons that follow, the court DENIES Miller's motion to dismiss (Mot. 2).

### I. Background

The court takes as true the facts pleaded in SD Ireland's counterclaims, making all reasonable inferences in its favor. *See* Section II *infra*.

Miller runs a drywall subcontracting business. In December 2024, he bid as drywall subcontractor for four duplex homes that SD Ireland planned to build in South Burlington.

SD Ireland told Miller that timely completion of the drywall subcontract required him to provide at least four workers, two to hang the sheetrock and two to follow behind to tape and sand; that the schedule for the drywall subcontract work included 3-4 days to hang the sheetrock and 3-4 days to tape and sand it, with an extra day or two built in for completing the first unit; and that the subcontractor must provide all subcontract construction materials, including drywall materials. SD Ireland also told Miller that he must provide SD Ireland with insurance certificates showing that he had liability insurance and workers' compensation provisions for all workers, including himself.

Miller assured SD Ireland that he had a competent work crew capable of meeting the schedule, that he could provide all of the drywall materials, and that he would provide insurance documentation. Miller told SD Ireland that he had independent contractors who would help him perform the work and that he would be onsite to manage the subcontractors at least once a day while the subcontractors were there.

SD Ireland informed Miller that all subcontract workers had to be approved by SD Ireland before working on the project and had to provide insurance certification. Miller agreed.

Based on Miller's representations, SD Ireland accepted Miller's bid. SD Ireland sent Miller a subcontract on January 24, 2025, to sign and return. He never did.

In March 2025, Miller admitted that he had no credit at any supply houses. As a result, SD Ireland purchased the drywall materials that Miller had agreed to provide. Miller provided insurance certificates for himself, but never for anyone else.

After starting the drywall work, Miller admitted to SD Ireland that he did not have sufficient workers and was unsure if he could finish the drywall project. Over several weeks, SD Ireland reiterated its concerns and warned Miller that it would terminate the subcontract if Miller could not perform. Miller replied that he understood.

Miller started hanging drywall in the first unit on April 14, 2025. After that, he came on site rarely to manage the other workers or to work himself. Miller's subcontracted workers came on site without SD Ireland's prior approval. One of Miller's workers admitted that "he had never even done that type of work before." Miller's work was "extremely substandard" and included "jagged cuts and exposed sub framing." On two separate occasions, SD Ireland found that some of Miller's workers had smoked marijuana on site, leaving a strong odor throughout the building.

When Miller had not completed the drywall work for the first unit by April 25, 2025, SD Ireland told him they would terminate him if he did not resolve the situation. Miller responded that he had arranged for another company, Hardrock Drywall, to hang sheetrock starting on April 29. Hardrock Drywall never showed and Miller conceded it never would. Miller promised to complete the drywall for the first unit before May 7, in time for painting. When Miller failed to meet this deadline, SD Ireland paid and terminated Miller.

## II. Discussion

### A. Legal Standard

Under V.R.Civ. P. 12(b)(6), the court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. The court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quotation omitted). "The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Off. of Child Support*, 173 Vt. 390, 395 (2002). As a result, only "where the plaintiff does not allege a legally cognizable claim, [is] dismissal . . . appropriate." *Montague*, 2019 VT 16, ¶ 11.

"The court's attention . . . is to be directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.Civ. P. 8(a)." *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982), *overruled on other grounds by Muzzy v. State,* 155 Vt. 279 (1990). Rule 8 requires a "short and plain statement of the claim" in "simple, concise, and direct" language with "all pleadings [to] be construed as to do substantial justice." V.R.Civ. P. 8(a), (e), (f). "[T]he threshold a plaintiff must cross in order to meet our notice-pleading

standard is exceedingly low." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citation omitted). Consequently, "[m]otions to dismiss for failure to state a claim are disfavored and should be rarely granted." *Id*. (citation omitted).

## B. Count I -- Fraudulent Inducement

For fraudulent inducement, a plaintiff "must show 'an intentional misrepresentation of existing fact, affecting the essence of the transaction,' where 'the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage.'" *Lynn v. Slang Worldwide, Inc.*, 2025 VT 30, ¶ 9 (quoting *Union Bank v. Jones*, 138 Vt. 115, 121 (1980)); *see also Silva v. Stevens*, 156 Vt. 94, 103 (1991) ("Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud.") (citing *White v. Pepin*, 151 Vt. 413, 416 (1989)).

Statements of opinion or "puffery" may not support a fraud claim, but statements of fact may. *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545. Examples of commercial puffery include representations of "exceptional value," "quality construction," "most outstanding value," and "premium quality." *Id*. (citing examples of puffery from other cases). Representations that one has a "bright," "sound," or "excellent" financial condition qualify as opinions not objectively verifiable. *Lynn*, 2025 VT 30, ¶ 12; *Heath*, 2006 VT 125, ¶ 14 (statements of opinion not actionable as fraudulent because they cannot be substantiated or refuted).

For Count I, SD Ireland relies on Miller's representations that: (1) he possessed the resources and credit at supply houses to provide all construction materials for the drywall subcontract; (2) he possessed enough qualified workers to meet the deadlines and that he would provide a list of these workers before inviting them to work at the site; and (3) he would provide liability insurance certificates for all his workers. Cntrclm. ¶¶ 24–26.

The court concludes these statements constitute statements of fact, not unverifiable opinion. In each, Miller represented what he had or would provide. *See also Kneebinding*, 2018 VT 101, ¶ 141 ("The intentional misrepresentation of future action creates a misrepresentation of existing fact in that the actor has lied as to their current intention.") (citation omitted). They may properly support SD Ireland's counterclaim for fraudulent inducement.

SD Ireland has pleaded this count sufficiently. Vermont requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." V.R.Civ. P. 9(b). A "primary objective" of this rule "'is to provide the defendant with sufficient information to enable them to effectively prepare a response.'" *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 73, 212 Vt. 612 (quoting *Silva*, 156 Vt. at 106); *see also* 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.) ("adequate notice" of the alleged representation "to enable that party to prepare a responsive pleading" satisfies Rule 9(b)). A plaintiff must "identify the particular statements or acts by particular defendants that they claim were fraudulent" and may not merely allege that defendant made "fraudulent or deceitful statements" without more specificity. *Sutton*, 2019 VT 71A, ¶ 73. As noted above, SD Ireland has identified particular representations Miller

allegedly made to induce SD Ireland to offer him the drywall subcontract. SD Ireland's pleading meets Rule 9(b)'s requirements.

### C. Count II -- Fraudulent Concealment

SD Ireland must show "concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Silva*, 156 Vt. at 103. "A duty to disclose may arise 'from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.'" *Lay v. Pettengill*, 2011 VT 127, ¶ 14, 191 Vt. 141 (quoting *White v. Pepin,* 151 Vt. 413, 416 (1989)).

SD Ireland asserts that Miller failed to disclose the following material facts in connection with his bid: (1) he lacked the necessary resources and credit to provide the subcontract materials for the job; (2) he lacked the labor commitments necessary to provide sufficient qualified workers to complete the drywall subcontract on time and to specification; and (3) he could not provide insurance certificates for all of his workers. Cntrclm. ¶¶ 33–35. SD Ireland asserts that Miller had a duty to disclose this information that Miller knew or had available to him and SD Ireland did not. In SD Ireland's mind, Miller omitted or concealed these facts and misled and defrauded them to secure his bid's acceptance. *Id*. ¶¶ 37–38.

The court agrees. Miller made or failed to make accurate factual representations, based on SD Ireland's allegations. Miller did not offer irrefutable statements of opinion. *See Lynn*, 2025 VT 30, ¶ 12; *Heath*, 2006 VT 125, ¶ 14 (statements of opinion not actionable as fraudulent because they cannot be substantiated or refuted). SD Ireland's allegations of fraudulent concealment suffice to survive dismissal.

### D. Count III -- Breach of Contract

"To state a breach of contract claim under Vermont law, Plaintiff must plead (1) the existence of a contract, (2) breach of the contract, and (3) damages." *Mooers v. Middlebury Coll.*, No. 2:20-CV-00144, 2021 WL 4225659, at *5 (D. Vt. Sept. 16, 2021) (Reiss, J.) (citing *Lapoint v. Dumont Constr. Co.*, 128 Vt. 8, 10 (1969)).

SD Ireland alleges that the parties agreed that Miller would provide all construction materials and labor for the drywall subcontract and that Miller breached the agreement by (1) failing to provide sufficient qualified labor to perform the drywall work properly and timely, (2) allowing substandard work by unsupervised, unqualified, and uninsured workers, and (3) failing to provide insurance certificates and workers' compensation waivers for his workers. Cntrclm. ¶¶ 41–42. SD Ireland asserts that it suffered damages as a result of Miller's breach. *Id*. ¶ 43.

"The purpose of a dismissal motion 'is to test the law of the claim, not the facts which support it.'" *Montague*, 2019 VT 16, ¶ 10 (quoting *Powers*, 173 Vt. at 395). The time will come for any party to challenge the other's contractual compliance. *See* Mot. at 6–7. For now, SD Ireland has adequately alleged its claim for breach of contract.

**E. Count IV -- Breach of the Covenant of Good Faith and Fair Dealing**

Every contract implies a covenant of good faith and fair dealing. *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208, (1993). It "exists to ensure that parties to a contract act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Id.* (quoting Restatement (Second) of Contracts § 205 cmt. a); *Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶ 32, 209 Vt. 244. The covenant applies not only to contract performance, but also to contract enforcement, and it "'is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts.'" *Tanzer*, 2018 VT 124, ¶ 32 (quoting *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 61, 198 Vt. 137).

When a party asserts both breach of contract and breach of the covenant of good faith and fair dealing, the two causes of action must arise from different and distinct conduct. *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 53, 218 Vt. 144 ("To the extent that Beldock's claim for breach of the implied covenant is duplicative of his breach-of-contract claim, it cannot be sustained as a matter of law."); *Tanzer*, 2018 VT 124, ¶ 33.

SD Ireland's claim needs narrowing. It asserts that Miller "breached the covenant . . . by failing to provide sufficient qualified labor to timely and properly perform the drywall subcontract work, and by allowing substandard work by unsupervised unqualified and uninsured workers . . . ." Cntrclm. ¶ 47. Count III arises from the same alleged activities. They may not support Count IV.

Other SD Ireland allegations may support Count IV: that Miller (1) made misrepresentations that induced SD Ireland to accept Miller's bid and (2) sought to charge SD Ireland for unwarranted "lost profits." Cntrclm. ¶ 47. As narrowed, SD Ireland's Count IV survives dismissal.

The court modifies paragraph 47 of Count IV as follows:

47. Mr. Miller breached the covenant by inducing a contract with deliberate misrepresentations as to his present ability to provide necessary materials and sufficient qualified labor to perform the drywall work, ~~and then by failing to provide sufficient qualified labor to timely and properly perform the drywall subcontract work, and by allowing substandard work by unsupervised, unqualified and uninsured workers,~~ and by seeking to charge Ireland for amounts for "lost profits" based on a fraudulently procured contract and that are not warranted in any event.

### III. Order

For the reasons set forth above, the court DENIES Miller's motion to dismiss (Mot. 2).

The court modifies paragraph 47 of Count IV as noted. SD Ireland may but need not file amended counterclaims with any other necessary conforming modifications to its counterclaims by March 20, 2026.

Miller shall answer SD Ireland's counterclaims by April 3, 2026.

Electronically signed pursuant to V.R.E.F. 9(d) on March 4, 2026.

Colin Owyang
Superior Court Judge